GROH *v.* RAMIREZ ET AL.

No. 02–811.   Argued November 4, 2003—Decided February 24, 2004

552

STEVENS, J., delivered the opinion of the Court, in which O'CONNOR, SOUTER, GINSBURG, and BREYER, JJ., joined. KENNEDY, J., filed a dis-

senting opinion, in which REHNQUIST, C. J., joined, *post*, p. 566. THOMAS, J., filed a dissenting opinion, in which SCALIA, J., joined, and in which REHNQUIST, C. J., joined as to Part III, *post*, p. 571.

*Richard A. Cordray* argued the cause for petitioner. With him on the briefs was *Harry Litman*.

*Austin C. Schlick* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Olson, Assistant Attorney General McCallum, Deputy Solicitor General Clement, Barbara L. Herwig,* and *Howard S. Scher*.

*Vincent J. Kozakiewicz* argued the cause for respondents. With him on the brief was *W. G. Gilbert III*.*

JUSTICE STEVENS delivered the opinion of the Court.

Petitioner conducted a search of respondents' home pursuant to a warrant that failed to describe the "persons or things to be seized." U. S. Const., Amdt. 4. The questions presented are (1) whether the search violated the Fourth Amendment, and (2) if so, whether petitioner nevertheless is entitled to qualified immunity, given that a Magistrate Judge (Magistrate), relying on an affidavit that particularly described the items in question, found probable cause to conduct the search.

---

*A brief of *amici curiae* urging reversal was filed for the State of Texas et al. by *Greg Abbott,* Attorney General of Texas, *R. Ted Cruz,* Solicitor General, *Barry R. McBee,* First Assistant Attorney General, *Jay Kimbrough,* Deputy Attorney General, and *Ryan D. Clinton,* Assistant Solicitor General, and by the Attorneys General for their respective States as follows: *Gregg D. Renkes* of Alaska, *M. Jane Brady* of Delaware, *Charles J. Crist, Jr.,* of Florida, *Mark J. Bennett* of Hawaii, *Steve Carter* of Indiana, *J. Joseph Curran, Jr.,* of Maryland, *Mike Hatch* of Minnesota, *Mike Moore* of Mississippi, *Brian Sandoval* of Nevada, *W. A. Drew Edmondson* of Oklahoma, *D. Michael Fisher* of Pennsylvania, *Lawrence E. Long* of South Dakota, *William H. Sorrell* of Vermont, *Jerry W. Kilgore* of Virginia, *Christine O. Gregoire* of Washington, and *Peggy A. Lautenschlager* of Wisconsin.

## I

Respondents, Joseph Ramirez and members of his family, live on a large ranch in Butte-Silver Bow County, Montana. Petitioner, Jeff Groh, has been a Special Agent for the Bureau of Alcohol, Tobacco and Firearms (ATF) since 1989. In February 1997, a concerned citizen informed petitioner that on a number of visits to respondents' ranch the visitor had seen a large stock of weaponry, including an automatic rifle, grenades, a grenade launcher, and a rocket launcher.[1] Based on that information, petitioner prepared and signed an application for a warrant to search the ranch. The application stated that the search was for "any automatic firearms or parts to automatic weapons, destructive devices to include but not limited to grenades, grenade launchers, rocket launchers, and any and all receipts pertaining to the purchase or manufacture of automatic weapons or explosive devices or launchers." App. to Pet. for Cert. 28a. Petitioner supported the application with a detailed affidavit, which he also prepared and executed, that set forth the basis for his belief that the listed items were concealed on the ranch. Petitioner then presented these documents to a Magistrate, along with a warrant form that petitioner also had completed. The Magistrate signed the warrant form.

Although the application particularly described the place to be searched and the contraband petitioner expected to find, the warrant itself was less specific; it failed to identify any of the items that petitioner intended to seize. In the portion of the form that called for a description of the "person or property" to be seized, petitioner typed a description of respondents' two-story blue house rather than the alleged stockpile of firearms.[2] The warrant did not incorporate by

---

[1] Possession of these items, if unregistered, would violate 18 U. S. C. § 922(o)(1) and 26 U. S. C. § 5861.

[2] The warrant stated: "[T]here is now concealed [on the specified premises] a certain person or property, namely [a] single dwelling residence two story in height which is blue in color and has two additions attached to

reference the itemized list contained in the application. It did, however, recite that the Magistrate was satisfied the affidavit established probable cause to believe that contraband was concealed on the premises, and that sufficient grounds existed for the warrant's issuance.[3]

The day after the Magistrate issued the warrant, petitioner led a team of law enforcement officers, including both federal agents and members of the local sheriff's department, in the search of respondents' premises. Although respondent Joseph Ramirez was not home, his wife and children were. Petitioner states that he orally described the objects of the search to Mrs. Ramirez in person and to Mr. Ramirez by telephone. According to Mrs. Ramirez, however, petitioner explained only that he was searching for "'an explosive device in a box.'" *Ramirez* v. *Butte-Silver Bow County*, 298 F. 3d 1022, 1026 (CA9 2002). At any rate, the officers' search uncovered no illegal weapons or explosives. When the officers left, petitioner gave Mrs. Ramirez a copy of the search warrant, but not a copy of the application, which had been sealed. The following day, in response to a request from respondents' attorney, petitioner faxed the attorney a copy of the page of the application that listed the items to be seized. No charges were filed against the Ramirezes.

Respondents sued petitioner and the other officers under *Bivens* v. *Six Unknown Fed. Narcotics Agents,* 403 U. S. 388 (1971), and Rev. Stat. § 1979, 42 U. S. C. § 1983, raising eight claims, including violation of the Fourth Amendment. App. 17–27. The District Court entered summary judgment for all defendants. The court found no Fourth Amendment violation, because it considered the case comparable to one in which the warrant contained an inaccurate address, and in such a case, the court reasoned, the warrant is sufficiently

the east. The front entrance to the residence faces in a southerly direction." App. to Pet. for Cert. 26a.

[3] The affidavit was sealed. Its sufficiency is not disputed.

detailed if the executing officers can locate the correct house. App. to Pet. for Cert. 20a–22a. The court added that even if a constitutional violation occurred, the defendants were entitled to qualified immunity because the failure of the warrant to describe the objects of the search amounted to a mere "typographical error." *Id.*, at 22a–24a.

The Court of Appeals affirmed the judgment with respect to all defendants and all claims, with the exception of respondents' Fourth Amendment claim against petitioner. 298 F. 3d, at 1029–1030. On that claim, the court held that the warrant was invalid because it did not "describe with particularity the place to be searched and the items to be seized," and that oral statements by petitioner during or after the search could not cure the omission. *Id.*, at 1025–1026. The court observed that the warrant's facial defect "increased the likelihood and degree of confrontation between the Ramirezes and the police" and deprived respondents of the means "to challenge officers who might have exceeded the limits imposed by the magistrate." *Id.*, at 1027. The court also expressed concern that "permitting officers to expand the scope of the warrant by oral statements would broaden the area of dispute between the parties in subsequent litigation." *Ibid.* The court nevertheless concluded that all of the officers except petitioner were protected by qualified immunity. With respect to petitioner, the court read our opinion in *United States* v. *Leon,* 468 U. S. 897 (1984), as precluding qualified immunity for the leader of a search who fails to "read the warrant and satisfy [himself] that [he] understand[s] its scope and limitations, and that it is not defective in some obvious way." 298 F. 3d, at 1027. The court added that "[t]he leaders of the search team must also make sure that a copy of the warrant is available to give to the person whose property is being searched at the commencement of the search, and that such copy has no missing pages or other obvious defects." *Ibid.* (footnote omitted). We granted certiorari. 537 U. S. 1231 (2003).

## II

The warrant was plainly invalid. The Fourth Amendment states unambiguously that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and *the persons or things to be seized*." (Emphasis added.) · The warrant in this case complied with the first three of these requirements: It was based on probable cause and supported by a sworn affidavit, and it described particularly the place of the search. On the fourth requirement, however, the warrant failed altogether. Indeed, petitioner concedes that "the warrant . . . was deficient in particularity because it provided no description of the type of evidence sought." Brief for Petitioner 10.

The fact that the *application* adequately described the "things to be seized" does not save the *warrant* from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents. See *Massachusetts* v. *Sheppard,* 468 U. S. 981, 988, n. 5 (1984) ("[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional"); see also *United States* v. *Stefonek,* 179 F. 3d 1030, 1033 (CA7 1999) ("The Fourth Amendment requires that the *warrant* particularly describe the things to be seized, not the papers presented to the judicial officer . . . asked to issue the warrant" (emphasis in original)). And for good reason: "The presence of a search warrant serves a high function," *McDonald* v. *United States,* 335 U. S. 451, 455 (1948), and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched nor available for her inspection. We do not say that the Fourth Amendment prohibits a warrant from cross-referencing other documents. Indeed, most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the war-

rant uses appropriate words of incorporation, and if the supporting document accompanies the warrant. See, *e. g.,* *United States* v. *McGrew,* 122 F. 3d 847, 849–850 (CA9 1997); *United States* v. *Williamson,* 1 F. 3d 1134, 1136, n. 1 (CA10 1993); *United States* v. *Blakeney,* 942 F. 2d 1001, 1025–1026 (CA6 1991); *United States* v. *Maxwell,* 920 F. 2d 1028, 1031 (CADC 1990); *United States* v. *Curry,* 911 F. 2d 72, 76–77 (CA8 1990); *United States* v. *Roche,* 614 F. 2d 6, 8 (CA1 1980). But in this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant. Hence, we need not further explore the matter of incorporation.

Petitioner argues that even though the warrant was invalid, the search nevertheless was "reasonable" within the meaning of the Fourth Amendment. He notes that a Magistrate authorized the search on the basis of adequate evidence of probable cause, that petitioner orally described to respondents the items to be seized, and that the search did not exceed the limits intended by the Magistrate and described by petitioner. Thus, petitioner maintains, his search of respondents' ranch was functionally equivalent to a search authorized by a valid warrant.

We disagree. This warrant did not simply omit a few items from a list of many to be seized, or misdescribe a few of several items. Nor did it make what fairly could be characterized as a mere technical mistake or typographical error. Rather, in the space set aside for a description of the items to be seized, the warrant stated that the items consisted of a "single dwelling residence . . . blue in color." In other words, the warrant did not describe the items to be seized *at all.* In this respect the warrant was so obviously deficient that we must regard the search as "warrantless" within the meaning of our case law. See *Leon,* 468 U. S., at 923; cf. *Maryland* v. *Garrison,* 480 U. S. 79, 85 (1987); *Steele* v. *United States,* 267 U. S. 498, 503–504 (1925). "We are not

dealing with formalities." *McDonald*, 335 U. S., at 455.
Because "'the right of a man to retreat into his own home
and there be free from unreasonable governmental intru-
sion'" stands "'[a]t the very core' of the Fourth Amend-
ment," *Kyllo* v. *United States*, 533 U. S. 27, 31 (2001) (quoting
*Silverman* v. *United States*, 365 U. S. 505, 511 (1961)), our
cases have firmly established the "'basic principle of Fourth
Amendment law' that searches and seizures inside a home
without a warrant are presumptively unreasonable," *Payton*
v. *New York*, 445 U. S. 573, 586 (1980) (footnote omitted).
Thus, "absent exigent circumstances, a warrantless entry to
search for weapons or contraband is unconstitutional even
when a felony has been committed and there is probable
cause to believe that incriminating evidence will be found
within." *Id.*, at 587–588 (footnote omitted). See *Kyllo*, 533
U. S., at 29; *Illinois* v. *Rodriguez*, 497 U. S. 177, 181 (1990);
*Chimel* v. *California*, 395 U. S. 752, 761–763 (1969); *McDon-
ald*, 335 U. S., at 454; *Johnson* v. *United States*, 333 U. S.
10 (1948).

We have clearly stated that the presumptive rule against
warrantless searches applies with equal force to searches
whose only defect is a lack of particularity in the warrant.
In *Sheppard*, for instance, the petitioner argued that even
though the warrant was invalid for lack of particularity, "the
search was constitutional because it was reasonable within
the meaning of the Fourth Amendment." 468 U. S., at 988,
n. 5. In squarely rejecting that position, we explained:

> "The uniformly applied rule is that a search conducted
> pursuant to a warrant that fails to conform to the partic-
> ularity requirement of the Fourth Amendment is uncon-
> stitutional. *Stanford* v. *Texas*, 379 U. S. 476 (1965);
> *United States* v. *Cardwell*, 680 F. 2d 75, 77–78 (CA9
> 1982); *United States* v. *Crozier*, 674 F. 2d 1293, 1299
> (CA9 1982); *United States* v. *Klein*, 565 F. 2d 183, 185
> (CA1 1977); *United States* v. *Gardner*, 537 F. 2d 861, 862
> (CA6 1976); *United States* v. *Marti*, 421 F. 2d 1263, 1268–

1269 (CA2 1970).   That rule is in keeping with the well-
established principle that 'except in certain carefully
defined classes of cases, a search of private property
without proper consent is "unreasonable" unless it has
been authorized by a valid search warrant.'   *Camara*
v. *Municipal Court,* 387 U. S. 523, 528–529 (1967).   See
*Steagald* v. *United States,* 451 U. S. 204, 211–212 (1981);
*Jones* v. *United States,* 357 U. S. 493, 499 (1958)."   *Ibid.*

Petitioner asks us to hold that a search conducted pursuant
to a warrant lacking particularity should be exempt from the
presumption of unreasonableness if the goals served by the
particularity requirement are otherwise satisfied.   He main-
tains that the search in this case satisfied those goals—which
he says are "to prevent general searches, to prevent the sei-
zure of one thing under a warrant describing another, and
to prevent warrants from being issued on vague or dubious
information," Brief for Petitioner 16—because the scope of
the search did not exceed the limits set forth in the applica-
tion.   But unless the particular items described in the affi-
davit are also set forth in the warrant itself (or at least incor-
porated by reference, and the affidavit present at the search),
there can be no written assurance that the Magistrate actu-
ally found probable cause to search for, and to seize, every
item mentioned in the affidavit.   See *McDonald,* 335 U. S.,
at 455 ("Absent some grave emergency, the Fourth Amend-
ment has interposed a magistrate between the citizen and
the police.   This was done . . . so that an objective mind
might weigh the need to invade [the citizen's] privacy in
order to enforce the law").   In this case, for example, it is at
least theoretically possible that the Magistrate was satisfied
that the search for weapons and explosives was justified by
the showing in the affidavit, but not convinced that any evi-
dentiary basis existed for rummaging through respondents'
files and papers for receipts pertaining to the purchase or
manufacture of such items.   Cf. *Stanford* v. *Texas,* 379 U. S.
476, 485–486 (1965).   Or, conceivably, the Magistrate might

have believed that some of the weapons mentioned in the affidavit could have been lawfully possessed and therefore should not be seized. See 26 U. S. C. § 5861 (requiring registration, but not banning possession of, certain firearms). The mere fact that the Magistrate issued a warrant does not necessarily establish that he agreed that the scope of the search should be as broad as the affiant's request. Even though petitioner acted with restraint in conducting the search, "the inescapable fact is that this restraint was imposed by the agents themselves, not by a judicial officer." *Katz* v. *United States*, 389 U. S. 347, 356 (1967).[4]

We have long held, moreover, that the purpose of the particularity requirement is not limited to the prevention of general searches. See *Garrison*, 480 U. S., at 84. A particular warrant also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *United States* v. *Chadwick*, 433 U. S. 1, 9 (1977) (citing *Camara* v. *Municipal Court of City and County of San Francisco*, 387 U. S. 523, 532 (1967)), abrogated on other grounds, *California* v. *Acevedo*, 500 U. S. 565 (1991). See also *Illinois* v. *Gates*, 462 U. S. 213, 236 (1983) ("[P]ossession

---

[4] For this reason petitioner's argument that any constitutional error was committed by the Magistrate, not petitioner, is misplaced. In *Massachusetts* v. *Sheppard*, 468 U. S. 981 (1984), we suggested that "the judge, not the police officers," may have committed "[a]n error of constitutional dimension," *id.*, at 990, because the judge had assured the officers requesting the warrant that he would take the steps necessary to conform the warrant to constitutional requirements, *id.*, at 986. Thus, "it was not unreasonable for the police in [that] case to rely on the judge's assurances that the warrant authorized the search they had requested." *Id.*, at 989, n. 6. In this case, by contrast, petitioner did not alert the Magistrate to the defect in the warrant that petitioner had drafted, and we therefore cannot know whether the Magistrate was aware of the scope of the search he was authorizing. Nor would it have been reasonable for petitioner to rely on a warrant that was so patently defective, even if the Magistrate was aware of the deficiency. See *United States* v. *Leon*, 468 U. S. 897, 915, 922, n. 23 (1984).

of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct").[5]

Petitioner argues that even if the goals of the particularity requirement are broader than he acknowledges, those goals nevertheless were served because he orally described to respondents the items for which he was searching. Thus, he submits, respondents had all of the notice that a proper warrant would have accorded. But this case presents no occasion even to reach this argument, since respondents, as noted above, dispute petitioner's account. According to Mrs. Ramirez, petitioner stated only that he was looking for an "'explosive device in a box.'" 298 F. 3d, at 1026. Because this dispute is before us on petitioner's motion for summary judgment, App. to Pet. for Cert. 13a, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor," *Anderson* v. *Liberty Lobby, Inc.*, 477 U. S. 242, 255 (1986) (citation omitted). The posture of the case therefore obliges us to credit Mrs. Ramirez's account, and we find that petitioner's description of "'an explo-

---

[5] It is true, as petitioner points out, that neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search. Rule 41(f)(3) provides that "[t]he officer executing the warrant must: (A) give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken; or (B) leave a copy of the warrant and receipt at the place where the officer took the property." Quite obviously, in some circumstances—a surreptitious search by means of a wiretap, for example, or the search of empty or abandoned premises—it will be impracticable or imprudent for the officers to show the warrant in advance. See *Katz* v. *United States*, 389 U. S. 347, 355, n. 16 (1967); *Ker* v. *California*, 374 U. S. 23, 37–41 (1963). Whether it would be unreasonable to refuse a request to furnish the warrant at the outset of the search when, as in this case, an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission, is a question that this case does not present.

sive device in a box'" was little better than no guidance at all. See *Stefonek*, 179 F. 3d, at 1032–1033 (holding that a search warrant for "'evidence of crime'" was "[s]o open-ended" in its description that it could "only be described as a general warrant").

It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted.[6] Because petitioner did not have in his possession a warrant particularly describing the things he intended to seize, proceeding with the search was clearly "unreasonable" under the Fourth Amendment. The Court of Appeals correctly held that the search was unconstitutional.

## III

Having concluded that a constitutional violation occurred, we turn to the question whether petitioner is entitled to qualified immunity despite that violation. See *Wilson* v. *Layne*, 526 U. S. 603, 609 (1999). The answer depends on whether the right that was transgressed was "'clearly established'"—that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier* v. *Katz*, 533 U. S. 194, 202 (2001).

Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid. See *Harlow* v. *Fitzgerald*, 457 U. S. 800, 818–819 (1982) ("If the law was clearly established, the im-

---

[6] The Court of Appeals' decision is consistent with this principle. Petitioner mischaracterizes the court's decision when he contends that it imposed a novel proofreading requirement on officers executing warrants. The court held that officers leading a search team must "mak[e] sure that they have a proper warrant that in fact authorizes the search and seizure they are about to conduct." 298 F. 3d 1022, 1027 (CA9 2002). That is not a duty to proofread; it is, rather, a duty to ensure that the warrant conforms to constitutional requirements.

munity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct"). Moreover, because petitioner himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid. Cf. *Sheppard*, 468 U. S., at 989–990. In fact, the guidelines of petitioner's own department placed him on notice that he might be liable for executing a manifestly invalid warrant. An ATF directive in force at the time of this search warned: "Special agents are liable if they exceed their authority while executing a search warrant and must be sure that a search warrant is sufficient on its face even when issued by a magistrate." Searches and Examinations, ATF Order O 3220.1(7)(d) (Feb. 13, 1997). See also *id.*, at 3220.1(23)(b) ("If any error or deficiency is discovered and there is a reasonable probability that it will invalidate the warrant, such warrant shall not be executed. The search shall be postponed until a satisfactory warrant has been obtained").[7] And even a cursory reading of the warrant in this case—perhaps just a simple glance—would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal.

No reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional. See *Payton*, 445 U. S., at 586–588. Indeed, as we noted nearly 20 years ago in *Sheppard:* "The uniformly applied rule is that a search conducted pursuant to a· warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional."

---

[7] We do not suggest that an official is deprived of qualified immunity whenever he violates an internal guideline. We refer to the ATF Order only to underscore that petitioner should have known that he should not execute a patently defective warrant.

468 U. S., at 988, n. 5.[8]   Because not a word in any of our cases would suggest to a reasonable officer that this case fits within any exception to that fundamental tenet, petitioner is asking us, in effect, to craft a new exception.   Absent any support for such an exception in our cases, he cannot reasonably have relied on an expectation that we would do so.

Petitioner contends that the search in this case was the product, at worst, of a lack of due care, and that our case law requires more than negligent behavior before depriving an official of qualified immunity.   See *Malley* v. *Briggs*, 475 U. S. 335, 341 (1986).   But as we observed in the companion case to *Sheppard*, "a warrant may be so facially deficient— *i. e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."   *Leon*, 468 U. S., at 923. This is such a case.[9]

---

[8] Although both *Sheppard* and *Leon* involved the application of the "good faith" exception to the Fourth Amendment's general exclusionary rule, we have explained that "the same standard of objective reasonableness that we applied in the context of a suppression hearing in *Leon* defines the qualified immunity accorded an officer." *Malley* v. *Briggs*, 475 U. S. 335, 344 (1986) (citation omitted).

[9] JUSTICE KENNEDY argues in dissent that we have not allowed "'ample room for mistaken judgments,'" *post*, at 571 (quoting *Malley*, 475 U. S., at 343), because "difficult and important tasks demand the officer's full attention in the heat of an ongoing and often dangerous criminal investigation," *post*, at 568.   In this case, however, petitioner does not contend that any sort of exigency existed when he drafted the affidavit, the warrant application, and the warrant, or when he conducted the search.   This is not the situation, therefore, in which we have recognized that "officers in the dangerous and difficult process of making arrests and executing search warrants" require "some latitude." *Maryland* v. *Garrison*, 480 U. S. 79, 87 (1987).

Nor are we according "the correctness of paper forms" a higher status than "substantive rights." *Post*, at 571.   As we have explained, the Fourth Amendment's particularity requirement assures the subject of the search that a magistrate has duly authorized the officer to conduct a search of limited scope.   This substantive right is not protected when the officer fails to take the time to glance at the authorizing document and

Accordingly, the judgment of the Court of Appeals is affirmed.

·*It is so ordered.*

JUSTICE KENNEDY, with whom THE CHIEF JUSTICE joins, dissenting.

I agree with the Court that the Fourth Amendment was violated in this case. The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The warrant issued in this case did not particularly describe the things to be seized, and so did not comply with the Fourth Amendment. I disagree with the Court on whether the officer who obtained the warrant and led the search team is entitled to qualified immunity for his role in the search. In my view, the officer should receive qualified immunity.

An officer conducting a search is entitled to qualified immunity if "a reasonable officer could have believed" that the search was lawful "in light of clearly established law and the information the searching officers possessed." *Anderson* v. *Creighton,* 483 U. S. 635, 641 (1987). As the Court notes, this is the same objective reasonableness standard applied under the "'good faith'" exception to the exclusionary rule. See *ante,* at 565, n. 8 (citing *Malley* v. *Briggs,* 475 U. S. 335, 344 (1986)). The central question is whether someone in the officer's position could reasonably but mistakenly conclude that his conduct complied with the Fourth Amendment. *Creighton, supra,* at 641. See also *Saucier* v. *Katz,* 533 U. S. 194, 206 (2001); *Hunter* v. *Bryant,* 502 U. S. 224, 227 (1991) *(per curiam).*

An officer might reach such a mistaken conclusion for several reasons. He may be unaware of existing law and how it should be applied. See, *e. g., Saucier, supra.* Alter-

---

detect a glaring defect that JUSTICE KENNEDY agrees is of constitutional magnitude, *post* this page.

natively, he may misunderstand important facts about the search and assess the legality of his conduct based on that misunderstanding. See, *e. g., Arizona* v. *Evans,* 514 U. S. 1 (1995). Finally, an officer may misunderstand elements of both the facts and the law. See, *e. g., Creighton, supra.* Our qualified immunity doctrine applies regardless of whether the officer's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Butz* v. *Economou,* 438 U. S. 478, 507 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

The present case involves a straightforward mistake of fact. Although the Court does not acknowledge it directly, it is obvious from the record below that the officer simply made a clerical error when he filled out the proposed warrant and offered it to the Magistrate Judge. The officer used the proper description of the property to be seized when he completed the affidavit. He also used the proper description in the accompanying application. When he typed up the description a third time for the proposed warrant, however, the officer accidentally entered a description of the place to be searched in the part of the warrant form that called for a description of the property to be seized. No one noticed the error before the search was executed. Although the record is not entirely clear on this point, the mistake apparently remained undiscovered until the day after the search when respondents' attorney reviewed the warrant for defects. The officer, being unaware of his mistake, did not rely on it in any way. It is uncontested that the officer trained the search team and executed the warrant based on his mistaken belief that the warrant contained the proper description of the items to be seized.

The question is whether the officer's mistaken belief that the warrant contained the proper language was a reasonable belief. In my view, it was. A law enforcement officer charged with leading a team to execute a search warrant for

568

illegal weapons must fulfill a number of serious responsibilities. The officer must establish probable cause to believe the crime has been committed and that evidence is likely to be found at the place to be searched; must articulate specific items that can be seized, and a specific place to be searched; must obtain the warrant from a magistrate judge; and must instruct a search team to execute the warrant within the time allowed by the warrant. The officer must also oversee the execution of the warrant in a way that protects officer safety, directs a thorough and professional search for the evidence, and avoids unnecessary destruction of property. These difficult and important tasks demand the officer's full attention in the heat of an ongoing and often dangerous criminal investigation.

An officer who complies fully with all of these duties can be excused for not being aware that he had made a clerical error in the course of filling out the proposed warrant. See *Maryland v. Garrison*, 480 U. S. 79, 87 (1987) (recognizing "the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants"). An officer who drafts an affidavit, types up an application and proposed warrant, and then obtains a judge's approval naturally assumes that he has filled out the warrant form correctly. Even if the officer checks over the warrant, he may very well miss a mistake. We all tend toward myopia when looking for our own errors. Every lawyer and every judge can recite examples of documents that they wrote, checked, and doublechecked, but that still contained glaring errors. Law enforcement officers are no different. It would be better if the officer recognizes the error, of course. It would be better still if he does not make the mistake in the first place. In the context of an otherwise proper search, however, an officer's failure to recognize his clerical error on a warrant form can be a reasonable mistake.

The Court reaches a different result by construing the officer's error as a mistake of law rather than a mistake of fact. According to the Court, the officer should not receive qualified immunity because "no reasonable officer could believe that a warrant that plainly did not comply with [the particularity] requirement was valid." *Ante*, at 563. The majority is surely right that a reasonable officer must know that a defective warrant is invalid. This much is obvious, if not tautological. It is also irrelevant, for the essential question here is whether a reasonable officer in petitioner's position would necessarily know that the warrant had a clerical error in the first place. The issue in this case is whether an officer can reasonably fail to recognize a clerical error, not whether an officer who recognizes a clerical error can reasonably conclude that a defective warrant is legally valid.

The Court gives little attention to this important and difficult question. It receives only two sentences at the very end of the Court's opinion. In the first sentence, the Court quotes dictum from *United States* v. *Leon*, 468 U. S. 897, 923 (1984), to the effect that "'a warrant may be so facially deficient—*i. e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'" *Ante*, at 565. In the second sentence, the Court informs us without explanation that "[t]his is such a case." *Ibid.* This reasoning is not convincing.

To understand the passage from *Leon* that the Court relies upon, it helps to recognize that most challenges to defective search warrants arise when officers rely on the defect and conduct a search that should not have occurred. The target of the improper search then brings a civil action challenging the improper search, or, if charges have been filed, moves to suppress the fruits of the search. The inquiry in both instances is whether the officers' reliance on the defect was reasonable. See, *e. g., Garrison, supra* (apartment wrongly searched because the searching officers did not realize that

there were two apartments on the third floor and obtained a warrant to search the entire floor); *Arizona* v. *Evans*, 514 U. S. 1 (1995) (person wrongly arrested and searched because a court employee's clerical error led officer to believe a warrant existed for person's arrest); *McCleary* v. *Navarro*, 504 U. S. 966 (1992) (White, J., dissenting from denial of certiorari) (house wrongly searched because informant told officers the suspect lived in the second house on the right, but the suspect lived in the third house on the right).

The language the Court quotes from *Leon* comes from a discussion of when "an officer [who] has obtained a [defective] warrant and abided by its terms" has acted reasonably. 468 U. S., at 922. The discussion notes that there are some cases in which "no reasonably well trained officer should rely on the warrant." *Id.*, at 923. The passage also includes several examples, among them the one that the Court relies on in this case: "[D]epending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Ibid.*

The Court interprets this language to mean that a clerical mistake can be so obvious that an officer who fails to recognize the mistake should not receive qualified immunity. Read in context, however, the quoted language is addressed to a quite different issue. The most natural interpretation of the language is that a clerical mistake can be so obvious that the officer cannot reasonably rely on the mistake in the course of executing the warrant. In other words, a defect can be so clear that an officer cannot reasonably "abid[e] by its terms" and execute the warrant as written. *Id.*, at 922.

We confront no such issue here, of course. No one suggests that the officer reasonably could have relied on the defective language in the warrant. This is a case about an officer being unaware of a clerical error, not a case about an officer relying on one. The respondents do not make the

usual claim that they were injured by a defect that led to an improper search. Rather, they make an unusual claim that they were injured simply because the warrant form did not contain the correct description of the property to be seized, even though no property was seized. The language from *Leon* is not on point.

Our Court has stressed that "the purpose of encouraging recourse to the warrant procedure" can be served best by rejecting overly technical standards when courts review warrants. *Illinois* v. *Gates*, 462 U. S. 213, 237 (1983). We have also stressed that qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U. S., at 341. The Court's opinion is inconsistent with these principles. Its analysis requires our Nation's police officers to concentrate more on the correctness of paper forms than substantive rights. The Court's new "duty to ensure that the warrant conforms to constitutional requirements" sounds laudable, *ante*, at 563, n. 6, but would be more at home in a regime of strict liability than within the "ample room for mistaken judgments" that our qualified immunity jurisprudence traditionally provides, *Malley*, *supra*, at 343.

For these reasons, I dissent.

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, and with whom THE CHIEF JUSTICE joins as to Part III, dissenting.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The precise relationship between the Amendment's Warrant Clause and Unreasonableness Clause is unclear. But neither Clause explicitly requires a warrant.

While "it is of course textually possible to consider [a warrant requirement] implicit within the requirement of reasonableness," *California* v. *Acevedo*, 500 U. S. 565, 582 (1991) (SCALIA, J., concurring in judgment), the text of the Fourth Amendment certainly does not mandate this result. Nor does the Amendment's history, which is clear as to the Amendment's principal target (general warrants), but not as clear with respect to when warrants were required, if ever. Indeed, because of the very different nature and scope of federal authority and ability to conduct searches and arrests at the founding, it is possible that neither the history of the Fourth Amendment nor the common law provides much guidance.

As a result, the Court has vacillated between imposing a categorical warrant requirement and applying a general reasonableness standard. Compare *Thompson* v. *Louisiana*, 469 U. S. 17, 20 (1984) *(per curiam)*, with *United States* v. *Rabinowitz*, 339 U. S. 56, 65 (1950). The Court has most frequently held that warrantless searches are presumptively unreasonable, see, *e. g.*, *Katz* v. *United States*, 389 U. S. 347, 357 (1967); *Payton* v. *New York*, 445 U. S. 573, 583 (1980), but has also found a plethora of exceptions to presumptive unreasonableness, see, *e. g.*, *Chimel* v. *California*, 395 U. S. 752, 762–763 (1969) (searches incident to arrest); *United States* v. *Ross*, 456 U. S. 798, 800 (1982) (automobile searches); *United States* v. *Biswell*, 406 U. S. 311, 315–317 (1972) (searches of "pervasively regulated" businesses); *Camara* v. *Municipal Court of City and County of San Francisco*, 387 U. S. 523, 534–539 (1967) (administrative searches); *Warden, Md. Penitentiary* v. *Hayden*, 387 U. S. 294, 298 (1967) (exigent circumstances); *California* v. *Carney*, 471 U. S. 386, 390–394 (1985) (mobile home searches); *Illinois* v. *Lafayette*, 462 U. S. 640, 648 (1983) (inventory searches); *Almeida-Sanchez* v. *United States*, 413 U. S. 266, 272 (1973) (border searches). That is, our cases stand for

the illuminating proposition that warrantless searches are *per se* unreasonable, except, of course, when they are not.

Today the Court holds that the warrant in this case was "so obviously deficient" that the ensuing search must be regarded as a warrantless search and thus presumptively unreasonable. *Ante*, at 558–559. However, the text of the Fourth Amendment, its history, and the sheer number of exceptions to the Court's categorical warrant requirement seriously undermine the bases upon which the Court today rests its holding. Instead of adding to this confusing jurisprudence, as the Court has done, I would turn to first principles in order to determine the relationship between the Warrant Clause and the Unreasonableness Clause. But even within the Court's current framework, a search conducted pursuant to a defective warrant is constitutionally different from a "warrantless search." Consequently, despite the defective warrant, I would still ask whether this search was unreasonable and would conclude that it was not. Furthermore, even if the Court were correct that this search violated the Constitution (and in particular, respondents' Fourth Amendment rights), given the confused state of our Fourth Amendment jurisprudence and the reasonableness of petitioner's actions, I cannot agree with the Court's conclusion that petitioner is not entitled to qualified immunity. For these reasons, I respectfully dissent.

## I

"[A]ny Fourth Amendment case may present two separate questions: whether the search was conducted pursuant to a warrant issued in accordance with the second Clause, and, if not, whether it was nevertheless 'reasonable' within the meaning of the first." *United States* v. *Leon,* 468 U. S. 897, 961 (1984) (STEVENS, J., dissenting). By categorizing the search here to be a "warrantless" one, the Court declines to perform a reasonableness inquiry and ignores the fact that this search is quite different from searches that the Court has considered to be "warrantless" in the past. Our cases

involving "warrantless" searches do not generally involve situations in which an officer has obtained a warrant that is later determined to be facially defective, but rather involve situations in which the officers neither sought nor obtained a warrant. See, *e. g., Anderson* v. *Creighton*, 483 U. S. 635 (1987) (officer entitled to qualified immunity despite conducting a warrantless search of respondents' home in the mistaken belief that a robbery suspect was hiding there); *Payton* v. *New York, supra* (striking down a New York statute authorizing the warrantless entry into a private residence to make a routine felony arrest). By simply treating this case as if no warrant had even been sought or issued, the Court glosses over what should be the key inquiry: whether it is always appropriate to treat a search made pursuant to a warrant that fails to describe particularly the things to be seized as presumptively unreasonable.

The Court bases its holding that a defect in the particularity of the warrant by itself renders a search "warrantless" on a citation of a single footnote in *Massachusetts* v. *Sheppard*, 468 U. S. 981 (1984). In *Sheppard*, the Court, after noting that "the sole issue . . . in th[e] case is whether the officers reasonably believed that the search they conducted was authorized by a valid warrant," *id.*, at 988, rejected the petitioner's argument that despite the invalid warrant, the otherwise reasonable search was constitutional, *id.*, at 988, n. 5. The Court recognized that under its case law a reasonableness inquiry would be appropriate if one of the exceptions to the warrant requirement applied. But the Court declined to consider whether such an exception applied and whether the search actually violated the Fourth Amendment because that question presented merely a "fact-bound issue of little importance." *Ibid.* Because the Court in *Sheppard* did not conduct any sort of inquiry into whether a Fourth Amendment violation actually occurred, it is clear that the Court assumed a violation for the purposes of its analysis. Rather than rely on dicta buried in a footnote in

*Sheppard,* the Court should actually analyze the arguably dispositive issue in this case.

The Court also rejects the argument that the details of the warrant application and affidavit save the warrant, because " '[t]he presence of a search warrant serves a high function.' " *Ante,* at 557 (quoting *McDonald* v. *United States,* 335 U. S. 451, 455 (1948)). But it is not only the physical existence of the warrant and its typewritten contents that serve this high function. The Warrant Clause's principal protection lies in the fact that the " 'Fourth Amendment has interposed a magistrate between the citizen and the police . . . so that an objective mind might weigh the need to invade [the searchee's] privacy in order to enforce the law.' " *Ante,* at 560. The Court has further explained:

> "The point of the Fourth Amendment . . . is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. . . . When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent." *Johnson* v. *United States,* 333 U. S. 10, 13–14 (1948) (footnotes omitted).

But the actual contents of the warrant are simply manifestations of this protection. Hence, in contrast to the case of a truly warrantless search, where a warrant (due to a mistake) does not specify on its face the particular items to be seized

but the warrant application passed on by the magistrate judge contains such details, a searchee still has the benefit of a determination by a neutral magistrate that there is probable cause to search a particular place and to seize particular items. In such a circumstance, the principal justification for applying a rule of presumptive unreasonableness falls away.

In the instant case, the items to be seized were clearly specified in the warrant application and set forth in the affidavit, both of which were given to the Judge (Magistrate). The Magistrate reviewed all of the documents and signed the warrant application and made no adjustment or correction to this application. It is clear that respondents here received the protection of the Warrant Clause, as described in *Johnson* and *McDonald*. Under these circumstances, I would not hold that any ensuing search constitutes a presumptively unreasonable warrantless search. Instead, I would determine whether, despite the invalid warrant, the resulting search was reasonable and hence constitutional.

## II

Because the search was not unreasonable, I would conclude that it was constitutional. Prior to execution of the warrant, petitioner briefed the search team and provided a copy of the search warrant application, the supporting affidavit, and the warrant for the officers to review. Petitioner orally reviewed the terms of the warrant with the officers, including the specific items for which the officers were authorized to search. Petitioner and his search team then conducted the search entirely within the scope of the warrant application and warrant; that is, within the scope of what the Magistrate had authorized. Finding no illegal weapons or explosives, the search team seized nothing. 298 F. 3d 1022, 1025 (CA9 2002). When petitioner left, he gave respondents a copy of the search warrant. Upon request the next day, petitioner faxed respondents a copy of the more detailed

warrant application. Indeed, putting aside the technical defect in the warrant, it is hard to imagine how the actual search could have been carried out any more reasonably.

The Court argues that this eminently reasonable search is nonetheless unreasonable because "there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit" "unless the particular items described in the affidavit are also set forth in the warrant itself." *Ante,* at 560. The Court argues that it was at least possible that the Magistrate intended to authorize a much more limited search than the one petitioner requested. *Ante,* at 560–561. As a theoretical matter, this may be true. But the more reasonable inference is that the Magistrate intended to authorize everything in the warrant application, as he signed the application and did not make any written adjustments to the application or the warrant itself.

The Court also attempts to bolster its focus on the faulty warrant by arguing that the purpose of the particularity requirement is not only to prevent general searches, but also to assure the searchee of the lawful authority for the search. *Ante,* at 561. But as the Court recognizes, neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41 requires an officer to serve the warrant on the searchee before the search. *Ante,* at 562, n. 5. Thus, a search should not be considered *per se* unreasonable for failing to apprise the searchee of the lawful authority prior to the search, especially where, as here, the officer promptly provides the requisite information when the defect in the papers is detected. Additionally, unless the Court adopts the Court of Appeals' view that the Constitution protects a searchee's ability to "be on the lookout and to challenge officers," while the officers are actually carrying out the search, 298 F. 3d, at 1027, petitioner's provision of the requisite information the following day is sufficient to satisfy this interest.

## III

Even assuming a constitutional violation, I would find that petitioner is entitled to qualified immunity. The qualified immunity inquiry rests on "the 'objective legal reasonableness' of the action, *Harlow* [v. *Fitzgerald*, 457 U. S. 800, 819 (1982)], assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson* v. *Creighton*, 483 .U. S., at 639. The outcome of this inquiry "depends substantially upon the level of generality at which the relevant 'legal rule' is . . . identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause . . . violates a clearly established right." *Ibid.* To apply the standard at such a high level of generality would allow plaintiffs "to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Ibid.* The Court in *Anderson* criticized the Court of Appeals for considering the qualified immunity question only in terms of the petitioner's "right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances." *Id.*, at 640. The Court of Appeals should have instead considered "the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." *Id.*, at 641.

The Court errs not only by defining the question at too high a level of generality but also by assessing the question without regard to the relevant circumstances. Even if it were true that no reasonable officer could believe that a search of a home pursuant to a warrant that fails the particularity requirement is lawful absent exigent circumstances—a proposition apparently established by dicta buried in a footnote in *Sheppard*—petitioner did not know when he car-

ried out the search that the search warrant was invalid—let alone legally nonexistent. Petitioner's entitlement to qualified immunity, then, turns on whether his belief that the search warrant was valid was objectively reasonable. Petitioner's belief surely was reasonable.

The Court has stated that "depending on the circumstances of the particular case, a warrant may be so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *United States* v. *Leon*, 468 U. S., at 923. This language makes clear that this exception to *Leon*'s good-faith exception does not apply in every circumstance. And the Court does not explain why it should apply here. As an initial matter, the Court does not even argue that the fact that petitioner made a mistake in preparing the warrant was objectively unreasonable, nor could it. Given the sheer number of warrants prepared and executed by officers each year, combined with the fact that these same officers also prepare detailed and sometimes somewhat comprehensive documents supporting the warrant applications, it is inevitable that officers acting reasonably and entirely in good faith will occasionally make such errors.

The only remaining question is whether petitioner's failure to notice the defect was objectively unreasonable. The Court today points to no cases directing an officer to proofread a warrant after it has been passed on by a neutral magistrate, where the officer is already fully aware of the scope of the intended search and the magistrate gives no reason to believe that he has authorized anything other than the requested search. Nor does the Court point to any case suggesting that where the same officer both prepares and executes the invalid warrant, he can never rely on the magistrate's assurance that the warrant is proper. Indeed, in *Massachusetts* v. *Sheppard*, 468 U. S. 981 (1984), the Court suggested that although an officer who is not involved in the warrant application process would normally read the issued warrant to determine the object of the search, an executing

officer who is also the affiant might not need to do so. *Id.,* at 989, n. 6.

Although the Court contends that it does not impose a proofreading requirement upon officers executing warrants, *ante,* at 563, n. 6, I see no other way to read its decision, particularly where, as here, petitioner could have done nothing more to ensure the reasonableness of his actions than to proofread the warrant. After receiving several allegations that respondents possessed illegal firearms and explosives, petitioner prepared an application for a warrant to search respondents' ranch, along with a supporting affidavit detailing the history of allegations against respondents, petitioner's investigation into these allegations, and petitioner's verification of the sources of the allegations. Petitioner properly filled out the warrant application, which described both the place to be searched and the things to be seized, and obtained the Magistrate's signature on both the warrant application and the warrant itself. Prior to execution of the warrant, petitioner briefed the search team to ensure that each officer understood the limits of the search. Petitioner and his search team then executed the warrant within those limits. And when the error in the search warrant was discovered, petitioner promptly faxed the missing information to respondents. In my view, petitioner's actions were objectively reasonable, and thus he should be entitled to qualified immunity.

For the foregoing reasons, I respectfully dissent.