ALITO, Circuit Judge,
dissenting.
I would reverse the order of the District Court and direct that summary judgment be entered in favor of the defendants. First, the best reading of the warrant is that it authorized the search of any persons found on the premises. Second, even if the warrant did not contain such authorization, a reasonable police officer could certainly have read the warrant as doing so, and therefore the appellants are entitled to qualified immunity.
*245 I.
Search warrants are “normally drafted by nonlawyers in the midst and haste of a criminal investigation.” United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Consequently, they are to be read “in a commonsense and realistic fashion.” Id. Here, the “commonsense and realistic” reading is that the issuing magistrate intended to authorize a search of all the occupants of the premises and that the warrant did so. Five points are important to keep in mind.
First, there is no doubt that the search warrant application sought permission to search all occupants of the premises. Indeed, the affidavit made this request in three separate paragraphs. Paragraph 17, after asking for authorization to search John Doe’s home and car, added:
The search should also include all occupants of the residence as the information developed shows that [John Doe] has frequent visitors that purchase methamphetamine. These persons may be on the premises at the time of the execution of the search warrant and may attempt to conceal controlled substances on their persons.
App. 498a (emphasis added).
Paragraph 20 reiterated that request:
This application seeks permission to search all occupants of the residence and their belongings to prevent the removal, concealment, or destruction of any evidence requested in this warrant.
And paragraph 21 repeated the request a third time:
As a result of the information developed, your affiant requests that a search warrant for methamphetamine and other controlled substances, drug paraphernalia, drug records, monies, proof of residence/ownership, documents, photographs, and weapons be issued for 618 Center St. Ashland, Pa., the residence of [John Doe] and all occupants therein.
App. 498a (emphasis added).
Second, the affidavit also clearly attempted to establish probable cause to search all occupants of the premises. The two affiants, who had background and training in drug cases, stated that, in their experience, drug dealers, when faced with “impending apprehension,” often give evidence to other persons present on the premises in the hope that “said persons will not be subject to search when police arrive” and that this will “prevent the discovery of said items.” See App. 494a.
Third, the warrant as drafted was intended to authorize a search of all persons on the premises. The warrant was drafted by the officers who applied for the warrant and was typed by one of those officers. App. 348a. Since the officers were seeking permission to search all occupants of the premises, they obviously intended for the draft warrant that they submitted to the magistrate to authorize the search of such persons.
Fourth, the warrant expressly incorporated the affidavit with respect to the issue that was most critical to the request to search all occupants, viz., the issue of probable cause. While probable cause to search premises does not necessarily provide probable cause to search every person who is found on the premises, see Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), if there is probable cause to believe that all of the persons found on the premises possess on their persons either contraband or evidence of a crime, there is no reason why a warrant authorizing a search of all such persons should not be issued. In this case, as noted, the affidavit submitted in support of the warrant application claimed that there was probable cause to search all such per *246 sons, and the warrant expressly incorporated that claim.
Fifth, after the warrant and affidavit were reviewed by the District Attorney’s office and presented to a magistrate, the magistrate carefully reviewed these documents and signed the warrant without alteration.
Under these circumstances, the “commonsense and realistic” reading of the warrant is that it authorized a search of all occupants of the premises. It seems quite clear that the magistrate intended to authorize a search of all occupants of the premises. As noted, the application repeatedly requested such authorization and set out facts that the officers (and presumably the District Attorney’s office) regarded as establishing probable cause. The warrant indisputably incorporated the affidavit with respect to the issue of probable cause, and the magistrate signed the warrant without alteration. The only reasonable inference is that the magistrate agreed with the affidavit that there was probable cause to search all occupants of the premises and that the magistrate intended to authorize such a search. The magistrate must have understood that the officers, who had drafted the warrant, believed that the warrant, if signed, would give them authorization to carry out a search of the scope specified in the application, viz., a search of “all occupants.” As a result, the magistrate surely would not have signed the warrant without modification if the magistrate had not wished to confer that authority.
The majority, however, raises a formal objection to the warrant. The majority contends that the warrant unambiguously limits the persons to be searched to John Doe alone. In reaching this conclusion, the majority relies on the entry that the officers placed in the box entitled “speoipiC DESCRIPTION OP PREMISES AND/OR PERSONS TO be SEARCHED.” App. 493a. In that box, the officers placed the name of John Doe, followed by his race, sex, date of birth, hair and eye color, and Social Security number. Id. The officers also included the address and a fairly detailed description of the premises. Id. This information more than filled the space allotted. Id.
At their depositions, both of the officers who signed the affidavit explained why they did not note in the box in question that the warrant authorized a search of all occupants of the premises. They stated that there simply was not room in that box and that the incorporation of the affidavit into the warrant (which was noted in the box entitled “probable cause belief is BASED ON THE FOLLOWING FACTS AND CIRCUMSTANCES”[10] was meant to provide a full description of the persons to be searched.[11]
*247 For present purposes, however, the majority attaches no significance to the entry in the box concerning probable cause. The majority takes the position that the only relevant entry is the one in the box entitled “specific description of PREMISES AND/OR PERSONS TO BE SEARCHED.” Because that entry does not refer to all occupants of the premises and does not state that the affidavit is incorporated for the purpose of specifying the persons to be searched, the majority concludes that the warrant does not authorize a search of all such persons. The majority states that the “warrant has no ambiguous ... terms on its face” and that it is therefore improper to look beyond the face of the warrant. Maj. Op. at 240.
I believe that the majority’s analysis is flawed. First and most important, the majority employs a technical and legalistic method of interpretation that is the antithesis of the “commonsense and realistic” approach that is appropriate.[12] Second, the face of the warrant here does not unambiguously restrict the persons to be searched to John Doe alone. As previously noted, the question whether occupants other than John Doe should be searched was closely tied (if not identical) to the question whether there was probable cause to search such persons, and the face of the warrant incorporated the affidavit with respect to the issue of probable cause. This incorporation, at the very least, creates a sufficient ambiguity to permit consideration of the affidavit and the circumstances surrounding the application.
For these reasons, I would hold that the warrant did in fact authorize a search of all persons on the premises, including Jane and Mary Doe.
The majority strives to justify its decision by invoking the Supreme Court’s recent decision in Groh v. Ramirez, — U.S. —, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (Sup.Ct. Feb. 24, 2004), but Groh simply does not speak to the question that divides this panel, i.e., the degree of technical precision that should be demanded in determining whether a warrant adequately incorporates an attached application or affidavit.
In Groh, law enforcement officers submitted an application for a warrant to *248 search a ranch for firearms, explosives, and records and later carried out a search for these items, but the warrant did not state that a search for such items was authorized and did not incorporate the application. Id. at -, 124 S.Ct. at 1288. In addition, when the search was completed, the officers gave one of the owners of the ranch a copy of the warrant, “but not a copy of the application, which had been sealed.” Id. at -, 124 S.Ct. at 1288 (emphasis added). The Court held that the warrant was defective because it did not particularly describe the type of evidence sought. Id. at -, 124 S.Ct. at 1289. However, the Court was careful to distinguish the case before it from a ease in which a warrant incorporates another document that contains such a specification. Id. at -, 124 S.Ct. at 1289. The Court wrote:
We do not say that the Fourth Amendment forbids a warrant from cross-referencing other documents. Indeed, most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant . But in this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been place under seal) accompany the warrant. Hence, we need not further explore the matter of incorporation.
Id. at —, 124 S.Ct. at 1290.
My disagreement with the majority concerns the question whether the mode of incorporation in this case was adequate, and Groh does not speak to this question. Groh merely refers without elaboration to “appropriate words of incorporation.” — U.S. at —, 124 S.Ct. at 1290. In my view, the appropriateness of “words of incorporation” is to be judged by the “commonsense and realistic” standard that is generally to be used in interpreting warrants. The majority, however, reads the warrant in this case almost as if it were a contract subject to the doctrine of contra proferen-tum. Groh does not justify such an approach.
II.
Even if the warrant did not confer such authorization, a reasonable officer certainly could have believed that it did, and therefore the defendants’ motion for summary judgment based on qualified immunity should have been granted. See Anderson v. Creighton, 483 U.S. 635, 640-41, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Qualified immunity “provides ample protection to all but the plainly incompetent or those who knowingly violate the law.” Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). See also, e.g., Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The appellants in this case did not exhibit incompetence or a willingness to flout the law. Instead, they reasonably concluded that the magistrate had authorized a search of all occupants of the premises where: (1) that is what the application sought; (2) the affidavit asserted that there was probable cause for such a search; (3) the warrant expressly incorporated the affidavit on the issue of probable cause, (4) the language of the warrant was drafted to confer authorization to search all occupants, and (5) the magistrate signed the warrant without modification. In light of the discussion of these points in part I of this opinion, it is unnecessary to address them further here.[13]
*249 In sum, the District Court erred in denying the defendants’ motion for summary judgment. I share the majority’s visceral dislike of the intrusive search of John Doe’s young daughter, but it is a sad fact that drug dealers sometimes use children to carry out their business and to avoid prosecution. I know of no legal principle that bars an officer from searching a child (in a proper manner) if a warrant has been issued and the warrant is not illegal on its face. Because the warrant in this case authorized the searches that are challenged — and because a reasonable officer, in any event, certainly could have thought that the warrant conferred such authority — I would reverse.

. The affidavit is also cross-referenced in the box entitled date of violations.” App. 498a.

. Officer Schaeffer testified that John Doe was mentioned in the box at issue because he "was the target,” but Officer Schaeffer added: "As you can see, that box is filled. You can’t include everything there.” App. 402a. See also id. at 403. He stated that the affidavit was "part of the search warrant and we include everything that we want in that affidavit of probable cause.... It’s impossible to fit everything we want in these little boxes they give us.” Id. at 402a-03.
Officer Phillips gave a similar explanation:
Q. Okay. You'll agree with me, sir, that on the face of the warrant it calls, under the heading "Specific Description of Premises and/or Persons to be Searched” the only individual named there is [John Doe], is that correct?
A. That is correct. And the reason for that is there's not enough room in that block to indicate every possible name of individuals who might be in the residence to be searched. That’s why we extended into the probable cause affidavit, just as the rest of the information is in the probable cause affidavit. It would not fit on the face sheet of this warrant.
*247 Q. So it’s your testimony that the only reason that the words and other, "and other occupants of the residence” do not appear on the face of the search warrant is there’s no room?
A. There's no room to list all of the occupants who may have been in the residence at the time with, along with an explanation of what "other occupants” are, include visitors, family members.
App. at 353a.

. The majority's mistaken approach is further exemplified by its suggestion that the affidavit does not actually state that, in the experience of the affiants, drug dealers "often hide drugs on family members and young children.” Maj. Op. at 242. The pertinent paragraph of the affidavit states:
This application seeks permission to search all occupants of the residence and their belongings to prevent the removal, concealment, or destruction of any evidence requested in this warrant. It is the experience of your co-affiants that drug dealers often attempt to do so when faced with impending apprehension and may give such evidence to persons who do not actually reside or own/rent the premises. This is done to prevent the discovery of said items in hopes that said persons will not be subject to search when police arrive.
The commonsense reading of this paragraph is that, in the experience of the affiants, drug dealers, when they áre about to be arrested, often give contraband or incriminating evidence to other persons who are on the premises ("occupants”) in the hope that these persons will not be searched. The majority notes that this passage does not literally state that "narcotics dealers often hide drugs on family members and young children,” but this is precisely the sort of technical, legalistic reading that is out of place in interpreting a search warrant or supporting affidavit.

. The plaintiffs argue that there was no probable cause to search them, but whether or not there was probable cause, when a warrant is issued, officers who execute the warrant are entitled to qualified immunity unless “the warrant application is so lacking *249 in indicia of probable cause as to render official belief in its existence unreasonable.” Malley v. Briggs, 475 U.S. at 344-45, 106 S.Ct. 1092. That high standard is not met here.