REINHARDT, Circuit Judge,
with whom BETTY B. FLETCHER, PREGERSON and PAEZ, Circuit Judges,
join, dissenting.[1]
I agree with the majority that because the Supreme Court has granted certiorari in a case that will likely resolve a question that we have consistently avoided — whether reasonable suspicion is required for the search of the home of a probationer or parolee who has executed a standard consent form as a condition of his probation or parole — we are justified in proceeding directly to the second prong of the Saucier test. I also agree for similar reasons that the pertinent law is not clearly established and, thus, that qualified immunity applies with respect to the search of a probationer’s' or parolee’s residence without reasonable suspicion. I further agree that probable cause to believe that a probationer or parolee lives in a particular place is required in order to search that location. Thus, my disagreement with the majority opinion is narrow. I disagree only with respect to the holding that probable cause existed for the officers to believe that Jamerson lived in Motley’s home. Contrary to the majority, I would hold that the officers did not have probable cause to believe that Jamerson currently resided there and would therefore reverse the district court’s determination that Officers Ruegg, Fading, Sanchez, and Black were entitled to qualified immunity.
As the majority notes, the information regarding Jamerson’s residence could have been collected at any point between November 1998, when the task force began gathering such information, and March 1999, when the LAPD briefing was conducted. Because Officer Ruegg assigned the task of gathering and confirming parolee information to another officer, he stated at his deposition that he had no way of knowing at what point during that period the information regarding Jamerson had been obtained. Aso at his deposition, Ruegg acknowledged his awareness that “sometimes parolees didn’t live where police thought they lived” and stated that he could not personally confirm the accuracy of any of the parolee data. Instead, Ruegg testified that it was the responsibility of the searching officers to verify such information before going to a parolee’s residence. Given Ruegg’s position and his knowledge that the information regarding Jamerson’s residence could well be stale, it was not reasonable for him to fail to verify it through the use of any of several available methods. See Ramirez v. Butte-Silver Bow County, 298 F.Sd 1022, 1027 (9th Cir.2002), aff'd by Groh v. Ramirez, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). As the supervisor of the search team, Ruegg is liable under § 1983 for the failure to verify and is not entitled to qualified immunity. See Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).
*1091 Similarly, probable cause was lacking for the searching officers to believe that Jamerson was currently residing with Motley. At the March 18, 1999 LAPD briefing, the searching officers were provided with Jamerson’s last known address and Jamerson’s parole status, but they were not informed how current or stale that information was. When they arrived at Motley’s residence, Motley told them that Jamerson» did not currently reside there and that he was being held in custody. Instead of calling Jamerson’s parole officer to ascertain whether it was true that Jamerson was currently in custody, or otherwise attempting to confirm such information, the officers lied, asserting falsely that Jamerson had been released, that Jamerson’s parole officer was accompanying them on the search, and that they had a warrant to search the premises.
Even after the officers communicated those deliberate falsehoods to Motley, she emphatically repeated that Jamerson did not currently reside at her home and was being held in custody. At this point, the officers had a clear duty to confirm Jamerson’s custody and residence status.
Although officers may reasonably “rely on information obtained from fellow law enforcement officers, ... this in no way negates a police officer’s duty to reasonably inquire or investigate these reported facts.” Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1293 n. 16 (9th Cir.1999) (citation omitted). Moreover, “[i]t is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted.” Groh, 540 U.S. at 563, 124 S.Ct. 1284. The searching officers in the instant case did not have a search warrant, but, as confirmed by their supervising officer, nevertheless had a duty to ensure that the information they possessed was correct. Of critical importance is the fact that the officers had not been advised by their supervisor how current or stale was the information regarding Jamerson’s residence. Thus, Motley’s repeated insistence that Jamerson was currently in custody, i.e. not currently in residence, was in no manner inconsistent with the specific information they possessed. Nevertheless, the officers made no attempt to verify Jamerson’s current residence, even though they presumably could easily have done so by making a quick phone call to Jamerson’s parole officer.[2] Furthermore, the officers’ deliberate falsehoods strongly suggest that they did not have a reasonable belief that Jamerson was still a resident and that they sought to obviate the necessity for a further inquiry by gaining entry through threats and deceit. All in all, Officers Kading, Sanchez, and Black did not have probable cause to believe that Jamerson currently resided in Motley’s home,[3] and, like Ruegg, are not *1092 entitled to qualified immunity.[4] Accordingly, I dissent.

. Although I concur in Parts I, II.A, II.C, III and IV, I dissent with respect to Part II.B and the final paragraph of Part II, and therefore with respect to the Conclusion and the ultimate holding.

. This analysis does not apply to Officer Webster, who was an officer in training at the time of the search and did not participate in the search of Motley's home.

. Justice Scalia recently asserted during oral argument in Ayotte v. Planned Parenthood of Northern New England, No. 04-1144 (S.Ct. argued Nov. 30, 2005), that it would take a doctor only thirty seconds to place a phone call to a judge to ask for the necessary permission to perform an abortion. One might assume that if it takes only thirty seconds for a doctor to reach a judge regarding an abortion, it would take even less time for a law enforcement officer to reach a parole officer in order to confirm an individual's custody status.

. Compare United States v. Harper, 928 F.2d 894, 896-97 (9th Cir.1991) (holding that the following facts about a parolee’s residence "just barely” constituted probable cause to believe he resided there: the parolee had lived with his family immediately prior to incarceration, the parolee's family leased the house and several family members lived there, a source told the officers that the parolee lived there, the police saw the parolee enter the house with his own key several times, and several of the parolee's known associates had their cars parked outside the house).