Carla SABIN, Plaintiff,

v.

Scott MILLER and Mary Chavez, Defendants.

No. 4:04 CV 40526 CFB.

United States District Court,
S.D. Iowa,
Central Division.

March 7, 2006.

Jeffrey M. Lipman, Lipman Law Firm, PC, Clive, IA, for Plaintiff.

Forrest A. Guddall, Department of Justice, Des Moines, IA, for Defendants.

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

BREMER, United States Magistrate Judge.

The Court has before it the Motion for Summary Judgment (Clerk's No. 12) filed under seal by Defendants on December 30, 2005, seeking dismissal of Plaintiff's claims against them under 42 U.S.C. § 1983. At the hearing on February 15, 2006, Jeffery Lipman represented Plaintiff, and Assistant Attorney General Forrest Guddall represented Defendants.

Plaintiff, an employee of the Iowa Department of Corrections (IDOC), alleges that Defendants, IDOC investigators, violated her constitutional rights under the Fourth Amendment, as applied to the states by the Fourteenth Amendment, when they entered her home and seized her private property. Plaintiff seeks compensatory and punitive damages.

In their Motion for Summary Judgment, Defendants assert that no genuine issues of material fact are in dispute and they are entitled to judgment as a matter of law. Defendants also assert the affirmative defense of qualified immunity. Plaintiff filed a Response on January 12, 2006, and Defendants filed a Reply on January 20.

The case was referred on February 14, 2005, to a United States Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c), and the parties' consent. This matter is fully submitted.

After carefully considering the evidence in the record and the memoranda presented by the parties, the Court finds and holds as follows on the issues presented.

## I. STANDARD FOR SUMMARY JUDGMENT

A court shall grant a motion for summary judgment only if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Laughlin v. Schriro*, 430 F.3d 927, 928 (8th Cir. 2005). The "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Groh v. Ramirez*, 540 U.S. 551, 562, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (alteration revised) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Laughlin*, 430 F.3d at 928.

To preclude entry of summary judgment, the nonmovant must make a showing sufficient to establish the existence of every element essential to his case, and on which he has the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Laughlin*, 430 F.3d at 928.

When a motion is made and supported as required in Federal Rule of Civil Procedure 56(a), the adverse party may not rest upon mere allegations or denials in his pleadings, but must set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. An issue is "genuine" if the evidence is sufficient to persuade a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. At the summary judgment stage, a court may not weigh the evidence or determine witness credibility. *Id.* at 249, 106 S.Ct. 2505.

## II. BACKGROUND

The following facts are either undisputed or viewed in the light most favorable to Plaintiff, Carla Sabin, the nonmoving party.

In September 2002, Sabin was working for IDOC's Iowa Prison Industries as a canteen supervisor at the Newton (Iowa) Correctional Facility (NCF). When her employer did not provide her a computer at the office, Sabin's supervisor, Roger Baysden, allowed her to use her personal laptop computer for work, both at the office and at home as needed. Baysden also arranged to have messages that were sent to Sabin's work e-mail address forwarded to her personal e-mail address. No evidence indicates the IDOC had any employee policy regarding employer access to employee-owned computers used both for work and personal purposes, and used both at the office and at home as needed.

On approximately Monday, September 30, 2002, IDOC and Iowa Prison Industries began investigating Sabin for allegedly improper employee conduct, including the following: blurring the boundaries of professionalism in her interaction with inmates; engaging in unauthorized communication with inmates and inappropri-

ate communication with staff members; intermingling personal and business use of her computer and/or electronic mail; compromising the integrity of the canteen's computer security by entrusting computer access to inmates; and compromising security within the canteen and prison system by routinely violating institutional directives and IDOC policies regarding granting various responsibilities and privileges to inmates. Two IDOC employees, Defendants Scott Miller and Mary Chavez, investigated the allegations against Sabin.

Baysden called Sabin on Wednesday, October 2, 2002, to tell her that Chavez was going to talk with her. Sabin stated in her affidavit that Baysden told her to "cooperate completely" with the investigator, and "[e]verything will be all right, as long as you do what they tell you to do." (Sabin Aff. at 2 (alteration added).) After questioning Sabin concerning her use of her laptop computer for work, Chavez and Miller told Sabin that they would have to examine her computer as part of their investigation. Sabin said her laptop computer was at her house. Sabin drove the investigators in her car to her house. Miller and Chavez followed Sabin from the car to her front door.

According to Sabin, she "opened the door and stated that I would go into the home, retrieve the laptop and bring it out." (Sabin Aff. at 2.) Chavez told Sabin, "this would not be acceptable and that they needed to come in with [Sabin]." *Id.* (alteration added). To Sabin, it "was clear [the investigators] did not trust me at all." *Id.* (alteration added). Sabin testified that Miller and Chavez entered her house with-

out permission and stood inside the doorway.

In contrast to Sabin's account, Defendants deny they entered Sabin's house without her permission. Defendants contend Sabin let them enter her house; she never protested or resisted when the investigators accompanied her into the house. Chavez stated that she and Miller entered the house, in part, to ensure that Sabin did not delete any files from the computer. (Chavez Aff. at 1.)

Standing inside the house, the investigators saw Sabin's laptop computer in the dining room, approximately 4 or 5 feet from the dining room entryway. Miller and Chavez also saw Sabin's desktop computer, which was switched on and sitting inside a computer cabinet in the dining room. Defendants contend that in response to their questioning, Sabin told them she had work-related files saved on her desktop computer. Chavez said, "we need that [desktop] computer too." (Sabin Aff. at 3 (alteration added)).[1] Sabin stated she protested and told Defendants they could not take her family's desktop computer. Sabin stated, and Defendants deny, that Miller said he and Chavez would not leave the house without taking both the desktop and laptop computers. (Sabin Aff. at 3; Defs.' App. at 6.)

Sabin testified she told Miller and Chavez two or three more times that the desktop computer belonged to her, that the computer had never been at NCF, and that the computer contained her personal information. (Sabin Aff. at 3.) When Miller and Chavez, "insisted that they were going to confiscate the [desktop] computer

---

1. In their Motion, Defendants contend they first asked Sabin for her desktop computer after they had returned to the prison from her house, and they rode with Sabin to her house a second time to get the desktop computer. (Defs.' Statement Undisp. Mat. Facts at 2;

Defs.' App. at 2.) At the hearing, however, Defendants agreed for purposes of the present Motion not to dispute Sabin's assertion that Defendants took both her computers during a single trip to her house.

and ordered m[e] to turn it over to them," Sabin realized that Miller and Chavez would not leave her house without the desktop computer. *Id.* (alteration added). Sabin stated that Miller and Chavez were upsetting her daughter and infant granddaughter.

Sabin stated that Miller walked into the dining room and turned off the desktop computer, but Sabin refused to allow him *to disconnect the computer from the cabinet*, because she feared he would damage the woodwork and cords. Sabin stated that Miller allowed her to disconnect the computer. Miller then carried the desktop computer out of the house and put it into Sabin's car. Sabin drove the investigators back to the prison with her two computers.

Sabin's employer suspended her for two weeks during the investigation.

## III. DISCUSSION

### A. Fourth Amendment Violation— Search and Seizure

Sabin claims that Miller and Chavez violated her Fourth Amendment rights during their search of her home and their seizure of her two computers. Defendants argue that their conduct did not violate Sabin's Fourth Amendment rights.

■ The Fourth Amendment guarantees that, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998); *see United States of America v. Cortez–Palomino*, 438 F.3d 910 (Feb. 28, 2006) (citing U.S. Const. amend. IV). The extent to which the Fourth Amendment protects a person may depend upon where he or she is. *Minne-*

*sota*, 525 U.S. at 88, 119 S.Ct. 469. The test for a person's "capacity to claim the protection of the Fourth Amendment" depends on whether the person "has a legitimate expectation of privacy in the invaded place." *Id.* (quoting *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)).

### 1. Applicability of Fourth Amendment to Sabin's Claims

### a. Whether Search Occurred

■ Defendants first argue that it is "questionable whether a search of Sabin's home residence occurred in the constitutional sense," because Defendants "did not enter Sabin's home to search it," but rather solely "to retrieve state computer records held on Sabin's personal home computers." (Br. Supp. Defs.' Mot. Summ. J. at 5.)

The reason the investigators entered the house, however, "is wholly irrelevant to the threshold question of whether the [Fourth] Amendment applies"; what matters "is the intrusion on the people's security from governmental interference." *Lesher v. Reed*, 12 F.3d 148, 150 (8th Cir.1994) (quoting *Soldal v. Cook County, Ill.*, 506 U.S. 56, 69, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992)); *DePugh v. Penning*, 888 F.Supp. 959, 983 (N.D.Iowa 1995) (same).

To "search" means "[t]o look over or through for the purpose of finding something; to explore; examine by inspection; as, to *search* the house for a book; to *search* the wood for a thief." *Kyllo v. United States*, 533 U.S. 27, 32 n. 1, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (citation omitted). The undisputed facts raise an inference that the investigators looked over an area of Sabin's home for the purpose of finding her computers. Viewing the record in the light most favorable to Sabin, the Court holds she has provided sufficient evidence to establish that Defen-

dants searched in her home within the meaning of the Fourth Amendment. Defendants are not entitled to summary judgment on the basis that no search occurred in the constitutional sense.

### b. Whether Sabin had a Legitimate Expectation of Privacy

Defendants next assert that Sabin did not have a legitimate expectation of privacy for Fourth Amendment purposes, in that the search and seizure involved a public employer's investigation of alleged employee misfeasance, Sabin had commingled business and personal information on her computers, and Iowa Code §§ 904.108(1)(a) and 904.403 gave prison officials access to property involved with an investigation.

■ Sabin's status as a public employee is not dispositive. *See Lesher*, 12 F.3d at 150 (stating the defendants "mistakenly" focused on the fact that the plaintiff was a public employee, when defendants argued no seizure occurred). A "public employee's rights with respect to searches or seizure in his home are no different than a private citizen's." *Id.* at 151 (holding public employer's seizure of dog in employee's home was subject to Fourth Amendment scrutiny) (citing *O'Connor v. Ortega*, 480 U.S. 709, 715, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987)). A search or seizure carried out in an individual's home without a warrant, even when conducted by a public employer, is *per se* unreasonable under the Fourth Amendment, unless it falls within one of the well-defined exceptions. *Id.* (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 474, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)); *see Groh*, 540 U.S. at 564, 124 S.Ct. 1284 (citing *Payton v. New York*, 445 U.S. 573, 586–88, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)).

■ The fact that Sabin allegedly mingled work files with her personal files on her computers did not vitiate her constitutional right. *See Lesher*, 12 F.3d at 150 (stating that plaintiffs' constitutional right against unreasonable seizures from their home was not vitiated merely because the employer believed the dog seized from plaintiffs belonged to employer).

Iowa Code § 904.108(1)(a) provides that the director of the Department of Corrections shall "[s]upervise the operations of the institutions under the department's jurisdiction and may delegate the powers and authorities given the director by statute to officers or employees of the department." Iowa Code § 904.108(1)(a) (alteration added). Under Iowa Code § 904.403, the director has certain investigatory powers, including the power to, "[h]ave access to all books, papers, and property material to the investigation," and "[o]rder the production of books or papers material to the investigation." Iowa Code § 904.403(3)-(4) (alterations added). These provisions do not address the facts at issue here—the power of the director or his employees to enter and search an employee's home and seize the employee's property from the home.

Defendants have not cited, and the Court has not found through its own independent research, any case law indicating that under the undisputed facts of this case, Sabin's legitimate expectation of privacy in her home was diminished by the rights granted to her employer in Iowa Code §§ 904.108(1)(a) and 904.403.

The Court holds that Sabin had a legitimate expectation of privacy in her home, and therefore she was entitled to Fourth Amendment protection against Defendants' search and seizure.

### 2. Consent Exception

Alternatively, Defendants argue that an exception to the Fourth Amendment's warrant requirement applies, because Sabin

consented to the search and seizure. Sabin denies she consented.

■ The government bears the burden to establish that a claimed exception to the warrant requirement applies. *United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004) (citing *Coolidge*, 403 U.S. at 455, 91 S.Ct. 2022). When the asserted exception is consent, the Fourth and Fourteenth Amendments require the government to show that "the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The state may not coerce its employees "into relinquishing a constitutional guarantee under threat of losing their employment." *Lesher*, 12 F.3d at 150 (declining to accept defendants' argument that no seizure occurred because the plaintiff, a public employee, consented to "a voluntary relinquishment of the dog in response to a direct order from a superior") (citing *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation of City of New York*, 392 U.S. 280, 284–85 n. 5, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968)). Voluntariness of consent is a question of fact determined by viewing the totality of relevant circumstances. *United States v. Janis*, 387 F.3d 682, 686 (8th Cir.2004) (citing *Schneckloth*, 412 U.S. at 227, 93 S.Ct. 2041).

■ Here, Sabin's supervisor called her on October 2, 2002, to tell her that an investigator was going to talk with her that day, that Sabin should "cooperate completely" with the investigator, and that, "[e]verything will be all right, as long as you do what they tell you to do." (Sabin Aff. at 2 (alteration added).)

Viewing the undisputed facts in the light most favorable to Sabin, the Court finds that she has generated genuine issues of material fact, including whether she consented to the search and seizure, and whether any consent was the result of duress or coercion. The Court therefore cannot hold that Defendants have met their burden to establish as a matter of law that Sabin consented voluntarily, without duress or coercion, express or implied.

### 3. *O'Connor* Reasonableness Standard

■ Defendants next argue that even if Sabin had a legitimate expectation of privacy in her home protected by the Fourth Amendment, and even if she did not consent to the search and seizure, Defendants are nonetheless entitled to summary judgment because the search and seizure satisfied the reasonableness standard set forth in *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). The *O'Connor* Court held the "standard of reasonableness under all the circumstances" applied to an employer's work-place investigation of a public employee's work-related misconduct. *O'Connor*, 480 U.S. at 725–26, 107 S.Ct. 1492. Under this standard, an employer can intrude on the employee's constitutionally protected privacy interests without probable cause or a warrant, so long as "both the inception and the scope of the intrusion" are reasonable. *Id.* at 726, 107 S.Ct. 1492. Sabin disputes that the *O'Connor* reasonableness standard was satisfied in this case. She asserts that the search and seizure at issue were unreasonable because they occurred in her home rather than in the workplace. (Pl.'s Mem. Supp. Res. Defs.' Mot. Summ J. at 12.)

Before determining whether the *O'Connor* reasonableness standard was satisfied in this case, the Court must first determine whether the standard is the appropriate one to apply, specifically whether the undisputed facts qualify as a matter of law for inclusion in the "certain limited circumstances" where neither probable cause nor a warrant is required for an

intrusion protected by the Fourth Amendment. *O'Connor,* 480 U.S. at 722, 107 S.Ct. 1492.

To determine the appropriate standard to apply, the *O'Connor* Court balanced the governmental interest justifying the work-related intrusions by public employers against the government employees' privacy interests in their workplace. *Id.* 723–25, 107 S.Ct. 1492. The governmental interest is "the efficient and proper operation of the workplace." *Id.* at 723, 107 S.Ct. 1492. Among the factors the Court considered was the fact that, "the work of these [government] agencies would suffer if employers were required to have probable cause before they entered an employee's desk for the purpose of finding a file or piece of office correspondence." *Id.* Considering several factors, the Court found the governmental interest was "substantial." *Id.* at 725, 107 S.Ct. 1492. Here, although some factors are similar to those considered in *O'Connor,* intrusion into Sabin's office at the workplace was not at issue, and therefore the IDOC's interest in "the efficient and proper operation of the workplace" is not as great as was the interest of the government employers under the circumstances considered in *O'Connor. See id.* at 723, 107 S.Ct. 1492.

Turning to the analysis of government employees' privacy interests in their government offices, the Court found that "[a]s with ... building inspections," the employer's intrusions at issue "involve[d] a relatively limited invasion of employee privacy," where the intrusions included entering the employee's office a number of times and seizing several work and personal items from the desk and file cabinets *Id.* at 713, 725, 107 S.Ct. 1492 (alteration added, internal quotation and citation omitted). The Court stated, "Government offices are provided to employees for the sole purpose of facilitating the work of an agency," and the employee "may avoid exposing person-al belongings at work by simply leaving them at home." *Id.* at 725, 107 S.Ct. 1492. The Court concluded that government employees' privacy interests in their place of work, "while not insubstantial, are *far less* than those found at home or in some other contexts." *Id.* (emphasis added).

The privacy interests of the government employee in *O'Connor* were "far less" than Sabin's privacy interests, because Defendants intruded into Sabin's home, not her government office. *See id.* The Court, through independent research, has found no case in which a court has applied the *O'Connor* reasonableness standard to an employer's intrusion into a public employee's privacy interests in the home. The *O'Connor* Court itself emphasized that it was determining the appropriate Fourth Amendment standard of reasonableness applicable to only two types of employer intrusions into public employees' privacy interests in the workplace: an investigatory search for evidence of a suspected work-related employee misfeasance, and a noninvestigatory work-related intrusion. *Id.* at 723, 107 S.Ct. 1492.

After balancing the governmental interests justifying Defendants' intrusions against Sabin's privacy interests in her home, the Court cannot conclude as a matter of law that the undisputed facts qualify for inclusion in the "certain limited circumstances" where neither probable cause nor a warrant is required. *Id.* at 722, 107 S.Ct. 1492. "With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Kyllo,* 533 U.S. at 31, 121 S.Ct. 2038.

Accordingly, the Court holds that the *O'Connor* reasonableness standard is not the appropriate Fourth Amendment standard to apply in this case. The Court therefore need not determine whether Defendants' search of Sabin's home and the

seizure of her two computers satisfied the *O'Connor* reasonableness standard. Defendants are not entitled to summary judgment on this basis.

## B. Qualified Immunity

Sabin has provided evidence from which a factfinder could determine that Defendants' search of her home and seizure of her computers violated her constitutional right. Defendants may nevertheless be entitled to summary judgment on the basis of qualified immunity, if they can show the violated right was not clearly established at the time of the violation. *See Groh*, 540 U.S. at 563, 124 S.Ct. 1284; *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In deciding that issue, a court's "relevant, dispositive inquiry" is whether the right's contours are sufficiently clear to inform a "reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151. The inquiry proceeds in light of the case's specific context, not as a broad general proposition. *Id.* at 201, 121 S.Ct. 2151.

Defendants assert they are entitled to qualified immunity from Sabin's claims because it was not clearly established on October 2, 2002, that they might be liable for violation of the Fourth Amendment under the circumstances of this case.

It was clearly established on October 2, 2002, that Sabin had a legitimate expectation of privacy in her home entitling her to Fourth Amendment protection, and that Defendants needed a warrant to intrude on her privacy interest in her home as they allegedly did on October 2. *See Lesher*, 12 F.3d at 150–51. Accordingly, viewing the record in the light most favorable to Sabin, the Court holds that Defendants Chavez and Miller are not entitled to qualified immunity on Sabin's Fourth Amendment search and seizure claim.

## IV. CONCLUSION

Viewing the facts and inferences in the light most favorable to Sabin, the Court concludes that genuine issues of material fact remain, and Defendants are not entitled to judgment as a matter of law on the Fourth Amendment search and seizure claims. The Court further holds that Defendants are not entitled to qualified immunity on these claims. For these reasons, the Court **denies** Defendants' Motion for Summary Judgment (Clerk's No. 12).

This case remains set for Final Pretrial Conference on March 22, 2006, at 10:30 a.m., and for jury trial in the three-week period beginning April 10, 2006. The parties shall comply with the requirements for Final Pretrial Conference as previously set forth in the Proposed Order for Final Pretrial Conferences.

The parties are reminded that they may contact the Hon. Ross A. Walters, telephone 515–284–6217, to discuss scheduling a settlement conference.

IT IS SO ORDERED.