[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10974
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-00337-TWT-RGV-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ZURY BRITO-ARROYO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 18, 2021)

Before JORDAN, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Zury Brito-Arroyo[1] appeals the district court's denial of his motion to suppress evidence resulting from a tracking device installed on his Jeep pursuant to a state court warrant. Brito argues that the district court erred by applying the good faith exception to the exclusionary rule. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In the summer of 2017, Homeland Security Investigations Special Agent Steven Ledgerwood received information from a confidential informant that the driver of a blue Jeep Grand Cherokee was involved in a methamphetamine transaction in Atlanta. The Jeep was registered in Buford, Georgia, and Special Agent Ledgerwood tracked it down to an apartment complex in Sandy Springs, Georgia. Special Agent Ledgerwood contacted the Sandy Springs Police Department for assistance surveilling the Jeep and was informed that the vehicle was involved in money laundering. The initial visual surveillance of the Jeep proved unsuccessful because the agents would "almost immediately" lose it in traffic. Special Agent Ledgerwood decided to use a tracking device.

On August 15, 2017, Special Agent Ledgerwood contacted Task Force Officer Eric Angel—who also served as a Deputy Sheriff at the Coweta County Sheriff's Office—and asked, "[C]an you hook us up with tracker order HU90EW blue Jeep Cherokee. We can try your new tracker out. Vehicle is moving currency

---

[1] Because Brito-Arroyo refers to himself as Brito, we do the same.

and Narcotics per reliable CI."   Special Agent Ledgerwood made this request because he believed that, as a state deputy sheriff, Task Force Officer Angel could obtain warrants from any state court in Georgia.  Special Agent Ledgerwood also knew that Task Force Officer Angel applied for warrants through state superior courts, which he believed could issue warrants for use anywhere in Georgia.  Task Force Officer Angel likewise believed that a state superior court could issue a warrant for use anywhere in the state. Special Agent Ledgerwood was also involved in a separate, ongoing drug-trafficking investigation connected to Coweta County. Task Force Officer Angel knew about this investigation and assumed that the tracker warrant for the Jeep "had something to do with that Coweta County case."

Task Force Officer Angel agreed to apply for the warrant and asked Special Agent Ledgerwood to provide him with the probable cause for the warrant.  Special Agent Ledgerwood e-mailed the following:

> On August 14, 2017, a reliable HSI confidential informant (CI), whose information has led to several arrests and seizures of multi-kilograms of heroin, cocaine and methamphetamine, advised that the driver of a blue Jeep Cherokee with Georgia tag HU90EW delivered narcotics to a known location where drug dealers assemble on Winters Chapel Road in Lawrenceville, Georgia. The CI advised that he/she overheard the driver advise the customer that he possessed more narcotics. Agents ran the tag and discovered that the vehicle was registered to a female in Buford, Georgia. HSI Agents discovered that Sandy Springs Police also had information that the vehicle was involved in money laundering.

Task Force Officer Angel "cut and pasted" the substance of Special Agent Ledgerwood's email into the tracker warrant application.  He also included in the

3

warrant application that the Jeep was being used "within Coweta County" to commit crimes and "is or will be located in Coweta County, Georgia." This portion of the application was unchanged from a previous warrant application that Task Force Officer Angel had submitted and which he had used as a template.

On August 17, 2017, a superior court judge in Coweta County signed the tracker warrant and authorized the installation of the tracking device "at any public place," as well as the tracking of the Jeep "in any County within the State of Georgia" should it leave Coweta County. Special Agent Ledgerwood received a signed copy of the warrant that same day. After he gave the warrant a "cursory" review to confirm it had been signed and that he had authorization to track the Jeep, he coordinated with three other agents to install the tracker. Special Agent Ledgerwood told these agents about the warrant but didn't show it to them.

On August 22, 2017, the tracker was installed while the Jeep was at an apartment complex in Fulton County, Georgia. Agents monitored the information received from the tracker, which led them to a house located in Norcross, Georgia. On August 28, 2017, agents began surveillance at the house. This surveillance led to: a traffic stop where Brito's Jeep was searched; the seizure and search of Brito's cellphone; and searches of the house in Norcross and the apartment in Fulton County. These searches uncovered cash, guns, a methamphetamine lab, several

4

gallons of liquid methamphetamine, and several kilograms of crystal methamphetamine.

On September 26, 2017, a grand jury returned a five-count indictment against Brito and two co-defendants. Brito was charged with conspiracy to manufacture and to possess with intent to distribute methamphetamine, manufacturing and possessing with intent to distribute methamphetamine within 1,000 feet of an elementary school, maintaining a residence to manufacture and to possess with intent to distribute methamphetamine, manufacturing and possessing with intent to distribute methamphetamine on premises where a minor child resides, and possession of a firearm by an alien illegally present in the United States. Brito moved to suppress the evidence derived from the tracking device. He argued that suppression was required for two reasons.

First, Brito argued that the state court judge signed the tracker warrant only because of false statements in the warrant application—specifically, that the Jeep was present in Coweta County when there was no evidence that it ever had been. Brito argued that Special Agent Ledgerwood and Task Force Officer Angel acted with "reckless disregard for the truth" in obtaining the warrant, requiring suppression under Franks v. Delaware, 438 U.S. 154 (1978).

Second, Brito argued that the warrant was void because the Coweta County superior court lacked jurisdiction to authorize a tracking device outside of its judicial

circuit.[2]   Brito argued that the execution of a void warrant violated the Fourth Amendment and required suppression.

The magistrate judge rejected both of Brito's arguments.  As to the Franks argument, the magistrate judge found that the agents' conduct didn't rise to the level of recklessness.  The magistrate judge determined that the evidence established only a negligent miscommunication between Special Agent Ledgerwood and Task Force Officer Angel in the course of obtaining the warrant, and mere negligence couldn't support a Franks claim. As to whether the warrant was void, the magistrate judge accepted Brito's "contention that the tracker warrant was void . . . under state law"—because the warrant targeted a car outside of the state court's jurisdiction—but concluded that "state law violations do not implicate the Fourth Amendment, and it is undisputed that the tracker warrant" met "the Fourth Amendment's requirements of probable cause and particularity."  Thus, the magistrate judge concluded that "there was no Fourth Amendment violation."  The magistrate judge also concluded that, even if there was a Fourth Amendment violation, the good faith exception applied because the agents reasonably relied on the warrant.

---

[2] The Coweta Judicial Circuit consists of Carroll, Coweta, Heard, Meriwether, and Troup Counties.  Ga. Code Ann. § 15-6-1(14). None of the locations listed in the warrant's probable cause section (Lawrenceville, Buford, and Sandy Springs) are in that circuit.  Lawrenceville and Buford are in Gwinnett County and Sandy Springs is in Fulton County.

The district court adopted the magistrate judge's report and recommendation. Brito then pleaded guilty to conspiracy to possess with intent to distribute methamphetamine, possession with intent to manufacture and distribute methamphetamine within 1,000 feet of an elementary school, maintaining a residence to manufacture and to possess with intent to distribute methamphetamine, and manufacturing and possessing with intent to distribute methamphetamine on premises where a minor child resides. Brito reserved his right to appeal the denial of his motion to suppress.

## STANDARD OF REVIEW

In reviewing a district court's denial of a motion to suppress, we review factual findings for clear error and the application of the law to those facts de novo. United States v. Ramirez, 476 F.3d 1231, 1235 (11th Cir. 2007).

## DISCUSSION

Brito argues that the district court erred in finding that the good faith exception to the exclusionary rule applied here. This was error, Brito says, because the district court adopted the magistrate judge's conclusion that the warrant was void, and a reasonable officer would have known that "a court cannot issue a warrant to track a

vehicle that had never been located within its jurisdiction."[3]  We disagree and affirm for two reasons.

First, Brito has failed to establish that a Fourth Amendment violation occurred here.  The magistrate judge accepted Brito's "contention that the tracker warrant was void . . . under state law," but said that this—standing alone—didn't equate to a violation of the Fourth Amendment.  Rather, the magistrate judge concluded that because "state law violations do not implicate the Fourth Amendment," there was "no Fourth Amendment violation" in this case and no need to "reach the government's good faith argument."  The district court adopted the magistrate judge's report and recommendation; thus, it too concluded that no Fourth Amendment violation occurred in this case.

The magistrate judge and the district court correctly concluded that a violation of state law, by itself, doesn't violate the Fourth Amendment.  Like the magistrate judge, we assume (without deciding) that the tracker warrant violated Georgia law because Brito's Jeep was located outside of the jurisdiction of the state court judge who authorized the warrant.  But even where a search warrant "may not have complied with certain conditions required by the state," that alone does "not offend

---

[3] Brito doesn't challenge on appeal the district court's conclusion that there was no Franks violation.

any constitutional principles that support the suppression of evidence." United States v. Gilbert, 942 F.2d 1537, 1542 (11th Cir. 1991).

Brito's case is just like United States v. Simms, 385 F.3d 1347 (11th Cir. 2004). In Simms, a Texas state court authorized the use of a tracking device on a car but ordered "that the tracking device could be used legally only within Texas." Id. at 1350. Law enforcement used the device "to track the vehicle into Alabama" and the car was detained "based partly on information obtained from the tracking device after the vehicle was no longer in Texas." Id. We concluded that no Fourth Amendment violation had occurred, even though the seizure of the car may have violated Texas law. The "use of the tracking device outside the scope of the warrant," we explained, "simply does not implicate federal constitutional concerns." Id. at 1356. This was because "constitutional considerations, rather than the demands of state law, direct our resolution of this issue." Id. at 1355–56 (quoting Gilbert, 942 F.2d at 1541).

So too here. The Fourth Amendment requires that a warrant "must be reviewed by 'a neutral and detached magistrate' before it can be executed." United States v. Martin, 297 F.3d 1308, 1316 (11th Cir. 2002) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 450 (1971)). The warrant must state with "particularity" the place to be searched or the things to be seized. See Groh v. Ramirez, 540 U.S. 551, 557 (2004). And the warrant must be supported by probable cause. See, e.g.,

9

United States v. Ventresca, 380 U.S. 102, 107 (1965).  Here, there is no dispute that these requirements were satisfied.  A neutral and detached magistrate issued the tracker warrant, which described with particularity Brito's Jeep and was supported by probable cause.  Brito has failed to point us to any "federal constitutional concern[]" establishing that this warrant violated the Fourth Amendment.  See Simms, 385 F.3d at 1356.

Second, even if the tracker warrant violated the Fourth Amendment, the good faith exception to the exclusionary rule applies here.  Where the Fourth Amendment has been violated, the exclusion of the resulting evidence is not automatic.  See Herring v. United States, 555 U.S. 135, 136 (2009) ("[S]uppression is not an automatic consequence of a Fourth Amendment violation.").  Exclusion is a remedy of "last resort," designed solely "to deter future Fourth Amendment violations." Davis v. United States, 564 U.S. 229, 236–37 (2011).  "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  Herring, 555 U.S. at 144.  When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the benefits of exclusion outweigh the costs.  See Davis, 564 U.S. at 229–31 (quoting Herring, 555 U.S. at 144).  But when the police reasonably act with a good-faith belief that their conduct is lawful, or when their conduct involves mere negligence,

10

the deterrent value of suppression is diminished.  See Davis, 564 U.S. at 229–31; United States v. Leon, 468 U.S. 897, 907–08 (1984).

Critically, "exclusion is not warranted when police act 'in objectively reasonable reliance' on a subsequently invalidated search warrant—in other words, when they act in 'good faith.'"  See United States v. Taylor, 935 F.3d 1279, 1289 (11th Cir. 2019) (quoting Leon, 468 U.S. at 922).  "So long as an officer could reasonably have thought that the warrant was valid, the specific nature of the warrant's invalidity is immaterial."  Id. at 1290 (applying the good faith exception to a search based on a void warrant).  Thus, "'our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'"  Herring, 555 U.S. at 145 (quoting Leon, 468 at 922 n.23).

Brito argues that Task Force Officer Angel and Special Agent Ledgerwood were grossly negligent in obtaining and executing the tracker warrant, barring application of the good faith exception.  We disagree.

As to Task Force Officer Angel, his incorrect statements in the warrant application—that the Jeep was being used "within Coweta County" to commit crimes and "is or will be located in Coweta County, Georgia"—were the result of a misunderstanding.  Task Force Officer Angel believed that Brito's Jeep was connected to one of Special Agent Ledgerwood's ongoing investigations in Coweta

11

County.    Although he was wrong, this miscommunication doesn't mandate suppression.    See id. ("[N]egligent police miscommunications in the course of acquiring a warrant do not provide a basis to rescind a warrant and render a search or arrest invalid.").

As to Special Agent Ledgerwood, it was not grossly negligent to rely on the superior court judge's warrant that authorized the installation of the tracker "at any public place."   The warrant also allowed the agents to track the Jeep "in any county within the State of Georgia."   This language reasonably permitted the installation and use of the tracker anywhere in Georgia, regardless of whether the Jeep had ever been in Coweta County.   If the superior court judge made an honest mistake about the scope of his authority, we cannot say that Special Agent Ledgerwood making the same honest mistake was objectively unreasonable.

## CONCLUSION

In sum, we conclude that Brito failed to establish that the tracker warrant violated his Fourth Amendment rights.   We also conclude that because any mistakes made in obtaining and executing the tracker warrant were, at most, only negligent, the district court didn't err in applying the good faith exception.   It therefore correctly denied Brito's motion to suppress.

**AFFIRMED.**