**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD MANRIQUEZ,
*Plaintiff-Appellee*,

v.

JOEL CHRISTIAN ENSLEY; BRYAN
LAWRENCE,
*Defendants-Appellants*,

and

TOWN OF SUPERIOR, a political
subdivision; RICHARD H. MUELLER;
ANTHONY DORAN,
*Defendants*.

No. 20-16917

D.C. No.
2:18-cv-02026-
DWL

OPINION

Appeal from the United States District Court
for the District of Arizona
Dominic Lanza, District Judge, Presiding

Argued and Submitted November 10, 2021
Pasadena, California

Filed August 30, 2022

Before:  Daniel P. Collins and Kenneth K. Lee, Circuit Judges, and Jill Otake,[*] District Judge.

Opinion by Judge Lee;
Partial Concurrence and Partial Dissent by Judge Otake

___

**SUMMARY**[**]

___

**Civil Rights**

The panel reversed the district court's denial of qualified immunity to police officers in an action brought pursuant to 42 U.S.C. § 1983 alleging that the officers violated the Fourth Amendment when they expanded the scope of a search warrant without physically amending the warrant.

The police officers at first complied with the requirement that a warrant include a description of the "place to be searched," by obtaining a warrant that listed a motel room suspected of being a hub for drug trafficking.  The officers then decided to search the suspect's home as well and asked the judge over the phone to expand the scope of the warrant to include the home.  The judge agreed, but the officers did not physically amend the warrant.

The panel agreed with the district court that the officers violated the Fourth Amendment because the warrant was

___

[*] The Honorable Jill Otake, United States District Judge for the District of Hawaii, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

facially defective. While a judge had orally approved the search of the home, the text of the Fourth Amendment still requires the warrant to specify the place to be searched. But the panel held that the district court erred in denying the officers qualified immunity because it was not clearly established at the time that the search would violate the Fourth Amendment. An officer could have believed—based on the lack of direct case law at the time—that he or she could search the home because the court had orally approved the search, even if the officer failed to make that change on the warrant.

Concurring in part and dissenting in part, Judge Otake concurred that the officers violated the Fourth Amendment when they searched plaintiff's home with a warrant that described a different location. Judge Otake respectfully dissented from the majority opinion because she believed that the Fourth Amendment's particularity requirement was plain and clearly established the constitutional right; any reasonable officer would have understood that the failure to include the place to be searched on the warrant would be constitutionally fatal.

## COUNSEL

James M. Jellison (argued), Jellison Law Offices PLLC, Carefree, Arizona, for Defendants-Appellants.

Martin A. Bihn (argued) and Donna M. McDaniel, Bihn & McDaniel PLC, Phoenix, Arizona, for Plaintiff-Appellee.

## OPINION

LEE, Circuit Judge:

The Fourth Amendment specifically requires a warrant to include a description of the "place to be searched." The police officers here—at first—complied with that requirement, obtaining a warrant that listed a motel room suspected of being a hub for drug trafficking. The officers then decided to search the suspect's home as well, and asked the judge over the phone to expand the scope of the warrant to include the home. The judge agreed, but the officers did not physically amend the warrant.

We agree with the district court that the officers violated the Fourth Amendment because the warrant was facially defective. While a judge had orally approved the search of the home, the text of the Fourth Amendment still requires the warrant to specify the place to be searched.

But we hold that the district court erred in denying the officers qualified immunity because it was not clearly established at the time that the search would violate the Fourth Amendment. An officer could have believed—based on the lack of direct case law at the time—that he or she could search the home because the court had orally approved

it, even if the officer failed to make that change on the warrant.  We thus reverse and remand.

## BACKGROUND

I.  **Officers obtain a warrant to search Room #1 at the Copper Mountain Motel.**

In August 2016, Officer Bryan Lawrence pulled over a truck in an area notorious for drug trafficking because he noticed that the truck had a cracked windshield.  A search of the truck uncovered a handgun, marijuana, and a glass pipe containing a residue consistent with methamphetamine. Several other officers, including Officer Joel Ensley, arrived at the scene and arrested the two people in the truck, one of whom was John Ray Soriano, a nephew of Plaintiff-Appellee Richard Manriquez.

A search of Soriano yielded a key to Room #1 of the Copper Mountain Motel located in Superior, Arizona. Because law enforcement was already investigating Soriano for drugs sold around that motel, Officer Ensley prepared an affidavit for a warrant application to search the motel room. The judge telephonically authorized the warrant, which listed the place to be searched as:

> [T]he premises known as: 577 W. Kiser Room #1 Superior AZ 85173, known as the Copper Mountain Motel, an L shaped configuration of motel rooms, with Room #1 located on the northeast corner of the property.  Room #1 is a brown-colored block building, which has a white front door, which is missing the room number.

## II. Officers then ask the judge to "amend" the warrant to include the suspect's home.

Rather than yielding a substantial cache of drugs, the search of the motel room uncovered only small quantities of marijuana, a shard of meth, a scale, and other drug paraphernalia. Officer Ensley then called the judge who had issued the initial warrant and asked for permission to "amend the search warrant to include another location"—Soriano's "primary residence," a house he shared with his uncle, Manriquez.

> The recorded phone conversation with the judge proceeded as follows:
>
> **Officer Ensley:** Bravo. Hey, this is Christian Ensley from the Superior P.D. Good evening. How are you?
>
> (Speaking Spanish).
>
> We – we would like to amend the search warrant to include another location, which would be the – the suspect's primary residence, which was discussed in the – in the affidavit, which is [the house on West Sonora]. Should we put this on speaker, man?
>
> **Unidentified speaker:** Yeah, I would.
>
> **Officer Ensley:** Hold on just a minute.
>
> **Unidentified speaker:** (Indiscernible).

**Officer Ensley:** Hey, Judge, you there?

**Judge:** Yeah.

**Officer Ensley:** Okay. That's what we'd like to do at this time. We – we've executed the search warrant for the primary location listed, and – and we'd like to try the – the other residence that was – that was articulated in the affidavit, his primary residence over on Sonora.

**Judge:** All right.

**Officer Ensley:** Do we have your permission to amend the search warrant?

**Judge:** Yeah, go ahead and amend it.

**Officer Ensley:** Okay. Are we – it would still serve that right now as one continuous search warrant?

**Judge:** (Indiscernible).

**Officer Ensley:** That's okay?

**Judge:** That's fine.

**Officer Ensley:** Okay. Very good. What time you got? You got a time?

**Unidentified speaker:** The time?

**Officer Ensley:** Yeah. We're going to amend the search warrant and go for another location.

**Unidentified speaker:** It is currently 10:38, 2238 hours.

**Officer Ensley:** Okay. Can you log that for me somehow and we'll write it up when we finish.

**Unidentified speaker:** Yeah.

**Officer Ensley:** Okay. Very good. We're going to respond to that other location and search there.

**Judge:** All right.

**Officer Ensley:** (Speaking Spanish).

**Judge:** Okay. Thank you.

**Officer Ensley:** Okay. Take care. Bye-bye.

**Judge:** Uh-huh. Bye-bye.

Relevant here, no officer physically amended the warrant before searching Manriquez's home.

### III.     Manriquez scuffles with the officers at his home.

The parties offer differing accounts of what happened when officers arrived at Manriquez's home. Manriquez claims that once he unlocked the door, the officers "gang

rushed" him, brought him to the ground, and began punching him.  The officers, in contrast, claim that after they told Manriquez they had a warrant to search his home, Manriquez became "belligerent" and was restrained for officer safety.

The officers then searched Manriquez's house.  The search uncovered, among other things, a digital scale with white residue and a meth pipe.  The County Attorney's Office declined to prosecute Manriquez for drug trafficking or for his conduct during the altercation at his home.  Officer Ensley still issued a citation charging Manriquez with two misdemeanors: possession of drug paraphernalia and obstructing governmental operations.  That case was heard by the same judge who had authorized the motel search warrant and its amendment.

Manriquez moved to exclude the evidence seized from his home, arguing (1) the search warrant was facially invalid, (2) the warrant application lacked probable cause, and (3) the officers had obtained the warrant through deception.  The judge granted the motion but did not provide any reasoning.

Manriquez also moved to dismiss both charges against him.  The judge dismissed the possession charge only.  Manriquez was then tried and found guilty of obstructing government operations.  Manriquez did not appeal that conviction.

## IV.    Manriquez files a Section 1983 suit.

Manriquez filed a civil action against the Town of Superior and four police officers, including Officers Lawrence and Ensley.  The complaint alleged three 42 U.S.C. §1983 claims for damages under the Fourth Amendment.  Although the district court granted qualified

immunity to some parties on some claims, it denied qualified immunity to Officers Lawrence and Ensley on Count II, Manriquez's illegal search claim. In concluding Officers Lawrence and Ensley were not entitled to qualified immunity, the district court noted: (1) the warrant was facially invalid for failure to specify the location to be searched, and (2) prior precedent clearly established that a search warrant must identify, with particularity, the place to be searched. Officers Lawrence and Ensley filed this appeal.

## STANDARD OF REVIEW

This court reviews de novo a district court's decision on qualified immunity. *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1067 (9th Cir. 2012). If there are disputed issues of material fact, we limit our review to whether the defendant would receive qualified immunity, "assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor." *Id.* at 1068.

## ANALYSIS

## I. The district court erred in denying Officers Lawrence and Ensley qualified immunity.

An official sued under § 1983 is entitled to qualified immunity unless it is shown that: (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time the violation occurred. *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (internal quotation omitted). Here, Officer Lawrence's and Officer Ensley's conduct violated a Fourth Amendment right that was not clearly established at the time of the violation. We thus hold that the district court erred in denying the officers qualified immunity.

**A. The officers violated the Fourth Amendment when they searched Manriquez's home using a warrant listing only Copper Mountain Motel.**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched*, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added). This particularity requirement protects property owners "by interposing, ex ante, the 'deliberate, impartial judgment of a judicial officer . . . between the citizen and the police,' and by providing, ex post, a right to suppress evidence improperly obtained and a cause of action for damages." *United States v. Grubbs*, 547 U.S. 90, 99 (2006) (citation omitted).

In determining whether this particularity requirement has been met, courts should analyze "(1) whether the warrant describes the place to be searched with 'sufficient particularity to enable law enforcement officers to locate and identify the premises with reasonable effort,' and (2) whether any reasonable probability exists that the officers may mistakenly search another premise." *United States v. Brobst*, 558 F.3d 982, 992 (9th Cir. 2009) (quoting *United States v. Mann*, 389 F.3d 869, 876 (9th Cir. 2004).

Here, it is undisputed that the warrant—as written at the time the officers searched Manriquez's home—listed only the motel room, not the home. But a technical error (such as an incorrect address) is not necessarily fatal if the rest of the description in the warrant adequately describes the place to be searched. *See, e.g.*, *United States v. Turner*, 770 F.2d 1508, 1511 (9th Cir. 1985). The "question is whether the defects are such that they would have been noticed by a reasonably careful officer who read the warrant before executing it." *Ramirez v. Butte-Silver Bow Cnty.*, 298 F.3d

1022, 1028 (9th Cir. 2002), *aff'd sub nom. Groh v. Ramirez*, 540 U.S. 551 (2004).  And thus a "warrant may be so facially deficient—*i.e.*, in *failing to particularize the place to be searched* or the things to be seized—that the executing officers cannot reasonably presume it to be valid."  *United States v. Leon*, 468 U.S. 897, 923 (1984) (emphasis added).

A reasonable officer should have noticed that the warrant authorized only the search of the motel room, not Manriquez's home.[1]  The wrinkle, however, is that a judge had orally authorized the search of Manriquez's home, even though the warrant was not physically amended to reflect that authorization.  And Manriquez does not contend that the officers exceeded the scope of the search orally authorized by the judge.  So the officers searched the home with the approval of an independent judiciary.

But a facially deficient warrant may not be salvaged just because "a [judge] authorized the search" or the search "did not exceed the limits intended by the [judge]."  *See Groh*,

---

[1] The good-faith exception does not apply for that reason.  *See Leon*, 486 U.S. at 924 (good-faith exception applies only if the officer's conduct was "objectively reasonable").  The dissent suggests that the reasonableness standard for the good-faith exception is equivalent to our qualified immunity analysis.  While there is admittedly substantial overlap between the two, the qualified immunity standard is more "forgiving" than the requirements of the Fourth Amendment. *Cf. Heien v. North Carolina*, 135 S. Ct. 530, 539 (2014).  For example, a court may hold that an officer's search does not fall within the good-faith exception based on analogous case law or even directly relevant authority from a sister circuit.  But there still might not be "clearly established" case law in our circuit to withstand qualified immunity. *Cf. Jessop v. City of Fresno*, 936 F.3d 937, 940 (9th Cir. 2019) (qualified immunity for officers who stole cash during a search because there is no clearly established law, even though their acts were "morally wrong" and unreasonable).

540 U.S. at 558.  The text of the Fourth Amendment requires the government to specify the place to be searched. *See Oliver v. United States*, 466 U.S. 170, 176 n.6 (1984) ("This Court frequently has relied on the explicit language of the Fourth Amendment as delineating the scope of its affirmative protections.").  And that requirement makes sense: the Fourth Amendment's particularity requirement curbs potential governmental abuse by informing people about the scope of the authorized search so that they can later challenge it.

We thus hold that the officers violated the Fourth Amendment by relying on a facially deficient warrant in searching Manriquez's home.

**B. The officers are entitled to qualified immunity because it was not clearly established then that the search violated the Fourth Amendment.**

We next address the second prong of the qualified immunity analysis:  Did the officers violate a constitutional right that was "clearly established" at the time the violation occurred?  *Plumhoff*, 572 U.S. at 778.

The novel facts underscore that the Fourth Amendment right here was not clearly established at the time.  The Supreme Court has held that a right is not clearly established "unless the right's contours were sufficiently definite that *any reasonable official* in the defendant's shoes would have understood that he was violating it." *Id.* at 778–79 *(emphasis added)*.  Courts thus must take care not to define the clearly established law "at a high level of generality" because doing so "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* at 779.  *See also City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (reversing this court for "saying

only that the 'right to be free of excessive force' was clearly established" when it "should have asked whether clearly established law prohibited the officers from stopping and taking down a man in [the] circumstances [presented].").

*Pointing to the Supreme Court's decision in Groh*, 540 U.S. 551, Manriquez argues Officers Lawrence and Ensley's conduct violated a right that was clearly established at the time the officers searched his home. *In Groh*, the Supreme Court held that officers who searched a plaintiff's home were not entitled to qualified immunity because the warrant failed to describe the items to be seized, a violation of clearly established law. *Id.* at 563. In the portion of the warrant form that called for a description of the "person or property" to be seized, an officer accidentally re-typed a description of the house to be searched, rather than the alleged stockpile of firearms the officers were searching for. *Id.* at 554–55. The Court thus held that any reasonable officer would have realized that the warrant was nonsensical on its face and not valid.

But the facts in *Groh* are distinguishable such that it could not have given clear notice to any reasonable officer that a search here would have been unconstitutional.

First, the warrant in *Groh* was never valid because it never listed the things to be seized (and instead included the nonsensical reference to the property to be searched). *Id.* at 554–55. The only way the officers could have remedied this deficiency was to contact a judge to approve the warrant. *See Ramirez*, 298 F.3d at 1026–27, *aff'd sub nom. Groh*, 540 U.S. 551 (noting a warrant "must contain all authorizations and limitations in writing" and that the "only way" to "remed[y] the defect in the warrant [at issue] was to ask a magistrate to issue a corrected version").

In contrast, the original warrant here was valid. The only issue is whether the court-approved amendment to the warrant was valid if the officers *themselves* did not make the ministerial change to the warrant. Put differently, unlike in *Groh*, where correcting the errors in the warrant would have required the officers to return to the judge, here the officers themselves could have validly corrected the warrant simply by adding the new location to it. That is a significant difference.

Second, a lurking concern in *Groh* was that the judge who had approved the warrant may not have signed off on the full scope of items listed in the officers' warrant application. *See* 540 U.S. at 560–61. That problem does not present itself here. The recorded phone call leaves no doubt that the judge authorized Officers Lawrence and Ensley to search Manriquez's home in the manner it was searched.

Under our qualified immunity doctrine, a right is "clearly established" only if no "reasonable officer" would believe that the challenged conduct was permissible. *Plumhoff*, 572 U.S. at 765, 778. In our case, a reasonable officer could have believed—based on the lack of direct case law at the time—that he or she could execute a court-authorized search if: (1) the officer already has a valid warrant and (2) a judge orally authorized expanding the scope of that warrant, even if the officer forgot to mark that amendment in the warrant. In other words, a reasonable officer could have viewed physically amending a warrant as the sensible and preferred course of action—but not believe that his own error in failing to write down the court's amendment would prevent the warrant from being valid under the Fourth Amendment. *See Groh*, 540 U.S. at 575 (Thomas, J. dissenting) (noting the Fourth Amendment's "principal protection" lies in the fact that it "impose[s] a magistrate between the citizen and the

police"). We thus conclude that it was not clearly established then that the search of Manriquez's home violated the Fourth Amendment.

## CONCLUSION

We **REVERSE** the district court's denial of qualified immunity for Officer Lawrence and Officer Ensley on Count II, and **REMAND** to the district court for further proceedings consistent with this opinion.

---

OTAKE, District Judge, concurring in part and dissenting in part:

I concur that the officers violated the Fourth Amendment when they searched Manriquez's home with a warrant that described a different location. But, as to the second prong of the qualified immunity inquiry, I respectfully dissent. The Fourth Amendment's particularity requirement is plain and clearly establishes the constitutional right; any reasonable officer would have understood that the failure to include the place to be searched on the warrant was constitutionally fatal.

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and *particularly describing the place to be searched*, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added) (capitalization omitted). Here there is no question relating to probable cause or the oath or affirmation requirement. But "a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing

officers cannot reasonably presume it to be valid." *United States v. Leon*, 468 U.S. 897, 923 (1984) (citation omitted).

The issue in this case is not how to interpret particularity. The defect in the warrant was neither typographical nor inadvertent. Rather, the warrant that the officers served at Manriquez's home did not describe the place to be searched *at all*, let alone with the particularity that the Fourth Amendment requires. *See United States v. Grubbs*, 547 U.S. 90, 97 (2006) ("The Fourth Amendment . . . . does not set forth some general 'particularity requirement.' It specifies only two matters that must be 'particularly described' in the warrant: 'the place to be searched' and 'the persons or things to be seized.'" (brackets omitted)). Any officer standing on the street in front of "711 W. Sonora" would have recognized the deficiency with only a cursory glance at the document (which authorized a search of a motel room on a different street). And "[g]iven that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004) (citation omitted).

Aside from the plain language of the Fourth Amendment, the Supreme Court's caselaw further supports the conclusion that the right at issue was clearly established. In *Groh v. Ramirez*, the Supreme Court denied qualified immunity to law enforcement agents who served a warrant which "failed to identify any of the items that petitioner intended to seize." *Groh*, 540 U.S. at 554. The deficiency in *Groh* apparently stemmed from a clerical error:

> Although the application particularly described the place to be searched and the contraband petitioner expected to find, the warrant itself was less specific[.] In the

portion of the form that called for a
description of the "person or property" to be
seized, petitioner typed a description of
respondents' two-story blue house rather than
the alleged stockpile of firearms.

*Id.* (footnote omitted). The Court held that the "warrant was
plainly invalid" despite the fact that "[i]t was based on
probable cause and supported by a sworn affidavit, and it
described particularly the place of the search." *Id.* at 557.
Rejecting the agents' argument that the search was
reasonable regardless, the Court noted that the oversight in
the warrant was more significant than "a mere technical
mistake or typographical error." *Id.* at 558. Instead, the
Court reasoned that "the warrant did not describe the items
to be seized *at all*. In this respect the warrant was so
obviously deficient that we must regard the search as
'warrantless' within the meaning of our case law." *Id.*
(citations omitted); *see Massachusetts v. Sheppard*, 468 U.S.
981, 988 n.5 (1984) ("The uniformly applied rule is that a
search conducted pursuant to a warrant that fails to conform
to the particularity requirement of the Fourth Amendment is
unconstitutional." (citations omitted)).

The Court then concluded that the right to a
particularized warrant was clearly established. *See Groh*,
540 U.S. at 563. And even though a magistrate approved the
warrant, the deficiency was so glaring "that any reasonable
police officer would have known [that it] was
constitutionally fatal." *Id.* at 564. In so concluding, the
Court emphasized that the particularity requirement serves
multiple purposes, including safeguarding against general
searches and "assur[ing] the individual whose property is
searched or seized of the lawful authority of the executing
officer, his need to search, and the limits of his power to

search." *Id.* at 561–62 (internal quotation marks and citation omitted).

I would conclude that *Groh* is indistinguishable in all material respects. As in *Groh*, here a neutral judge found there was probable cause to conduct the search. Likewise, the warrant here described with particularity only one of the two constitutional requirements. The warrant in *Groh* and the warrant here wholly failed to include the other constitutionally mandated description—the things to be seized in *Groh* and the place to be searched here. *Groh* thus forecloses the principle that close enough is good enough when a warrant completely omits one of the textual requirements in the Fourth Amendment. *See Messerschmidt v. Millender*, 565 U.S. 535, 546–47, 555 (2012) (reiterating that a warrant can be so facially deficient as to render it invalid even when approved by a neutral magistrate (citing *Leon*, 468 U.S. 897; *Groh*, 540 U.S. 551)). Or put differently, "even a cursory reading of the warrant in this case—perhaps just a simple glance—would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal." *Groh*, 540 U.S. at 564.

That *Groh* did not involve an attempted amendment to a warrant is insignificant. As *Groh* suggests, the face of the warrant at the time it is served is what matters: "Because petitioner did not have in his possession a warrant particularly describing the things he intended to seize, proceeding with the search was clearly 'unreasonable' under the Fourth Amendment." *Id.* at 563. Here there can be no dispute that the officers lacked a particularized warrant when they proceeded with the search. Appellants do not argue any exigency or explain why they neglected to annotate the warrant to reflect Judge Bravo's purported authorization to

search Manriquez's home in addition to the motel room originally described in the warrant.

The majority distinguishes *Groh* by contending that the warrant in that case was never valid because it did not list anything to be seized. But whether a warrant began as valid as to a *different* location (or item to be seized) is immaterial such that the warrant's initial description of *a* place in this case (the motel room) seems a distinction without a difference. Search warrants are not abstract documents detached from the subjects of the searches; they are directed at particular people, places, and things. The plain fact here is that the warrant was never valid as to Manriquez's home.[1]

And, as the District Court observed, there is at least a question as to what exactly Judge Bravo authorized during his phone call with Officer Ensley. On a motion for summary judgment, we must read the facts in the light most favorable to Manriquez as the non-moving party. *See Tuuamalemalo v. Greene*, 946 F.3d 471, 476 (9th Cir. 2019) ("In qualified immunity cases, as in other cases, 'we view the facts in the light most favorable to the nonmoving party.'" (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014))); *see also Groh*, 540 U.S. at 562. Reading the facts as such, a factfinder could conclude that Judge Bravo expected the officers to change the warrant *and then* serve it at Manriquez's home, rather than the reverse—*i.e.*, serve it

---

[1] The majority recognizes the good-faith exception from *United States v. Leon*, 486 U.S. at 924, does not apply here because any reasonable officer would have noticed that the warrant did not authorize a search of Manriquez's home. That same standard of objective reasonableness is applied when determining the qualified immunity accorded an officer. *See Messerschmidt*, 565 U.S. at 546 & n.1 (quoting *Malley v. Briggs*, 475 U.S. 335, 344 (1986)) (citing *Groh*, 540 U.S. at 565 n.8).

and later amend it. The transcript of the phone call between Officer Ensley and Judge Bravo is as follows:

> **Officer Ensley:** – Bravo. Hey, this is Christian Ensley from the Superior P.D. Good evening. How are you?
>
> (Speaking Spanish).
>
> We – *we would like to amend the search warrant* to include another location, which would be the – the suspect's primary residence, which was discussed in the – in the affidavit, which is 711 West Sonora. Should we put this on speaker, man?
>
> **Unidentified speaker:** Yeah, I would.
>
> **Officer Ensley:** Hold on just a minute.
>
> **Unidentified speaker:** (Indiscernible).
>
> **Officer Ensley:** Hey, Judge, you there?
>
> **Judge Bravo:** Yeah.
>
> **Officer Ensley:** Okay. That's what we'd like to do at this time. We – we've executed the search warrant for the primary location listed, and – and we'd like to try the – the other residence that was – that was articulated in the affidavit, his primary residence over on Sonora.
>
> **Judge Bravo:** All right.

**Officer Ensley:** *Do we have your permission to amend the search warrant?*

**Judge Bravo:** Yeah, *go ahead and amend it.*

**Officer Ensley:** Okay. Are we – it would still serve that right now as one continuous search warrant?

**Judge Bravo:** (Indiscernible).

**Officer Ensley:** That's okay?

**Judge Bravo:** That's fine.

**Officer Ensley:** Okay. Very good. What time you got? You got a time?

**Unidentified speaker:** The time?

**Officer Ensley:** Yeah. *We're going to amend the search warrant and go for another location.*

**Unidentified speaker:** It is currently 10:38, 2238 hours.

**Officer Ensley:** Okay. Can you log that for me somehow and we'll write it up when we finish.

**Unidentified speaker:** Yeah.

> **Officer Ensley:** Okay. Very good. We're going to respond to that other location and search there.
>
> **Judge Bravo:** All right.
>
> **Officer Ensley:** (Speaking Spanish).
>
> **Judge Bravo:** Okay. Thank you.
>
> **Officer Ensley:** Okay. Take care. Bye-bye.
>
> **Judge Bravo:** Uh-huh. Bye-bye.

(emphasis added).

The conversation begins with the officer stating that he seeks to amend the warrant, not that he would like to serve the warrant at a second location. Specifically, Officer Ensley first notes that the officers "would like to amend the search warrant" and then asks Judge Bravo explicitly, "[d]o we have your permission to amend the search warrant," and Judge Bravo responds, "[y]eah, go ahead and amend it." This could imply to Judge Bravo that the officer will take an affirmative step before serving the warrant—that he was going to change the document. Only after Judge Bravo says, "go ahead and amend it," which also suggests that the officer needs to take some action, does Ensley say, "[o]kay. Are we – it would still serve that right now as one continuous search warrant?" Whatever "one continuous search warrant" means, it did not clearly or necessarily represent to Judge Bravo the officers' plan to serve the warrant without amendment. In fact, after that exchange Ensley repeats, "[w]e're going to amend the search warrant and go for another location." The conversation with Judge Bravo is

quick, disjointed, and somewhat ambiguous, but read in the light most favorable to Manriquez, Ensley requested permission to change the warrant *and then* search the other location, which Judge Bravo granted. There is at least a factual dispute about what Judge Bravo signed off on and, read in the light most favorable to Manriquez, a factfinder could conclude that Judge Bravo did not authorize the officers to serve the warrant before amending the document.[2] Here the officers relied on Judge Bravo's approval to amend the warrant but took no further action to make the warrant constitutionally compliant. This left the warrant glaringly deficient and failed to protect Manriquez's rights under the Fourth Amendment.

For the foregoing reasons I would affirm.

---

[2] That Judge Bravo suppressed evidence in the state criminal trial suggests he did not think the good faith exception to the exclusionary rule applied.